J-S41004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TARRELL RISTER | : | |
| Appellant | : | No. 220 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002723-2018

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED NOVEMBER 26, 2024**

Tarrell Rister (Appellant) appeals from the judgment of sentence imposed following his convictions (a) by a jury of one count each of first-degree murder, firearms not to be carried without a license, carrying a firearm on public property in Philadelphia, and possession of an instrument of crime (PIC); and (b) by the trial court of persons not to possess firearms.[1] We affirm.

The trial court detailed the evidence presented at trial as follows:

> On December 16, 2017, at approximately 6:20 p.m., the decedent, Muhammaud Johnson [(Johnson or the victim)], met [Appellant] outside of Joe's Market at the corner of Benner Street and Torresdale Avenue in Philadelphia. N.T., 11/14/23, at 61, 176-79, 184; N.T., 11/15/[23], at 84-85, 172-74. [Appellant] had previously arranged to purchase marijuana from another man,

_____

[1] **See** 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, 907(a), 6105(a)(1).

Shakur Bennett [(Bennett)], but Bennett sent Johnson to complete the transaction. N.T., 11/15/23, at 173-74. Johnson gave [Appellant] two bags of marijuana and the two men parted ways. N.T., 11/14/23, at 179-80; [N.T.,] 11/15/23, at 173-74, 181-82. At approximately 6:45 p.m., [Appellant] texted Bennett that he wanted "two more." N.T., 11/15/23, at 85, 174-75. At approximately 7:15 p.m., [Appellant] returned to Joe's Market, where he waited for Johnson to arrive. N.T., 11/14/23, at 180-81; N.T., 11/15/23, at 174. A short time later, Johnson also returned to Joe's Market, where he met with [Appellant] outside of the store. N.T., 11/14/23, at 182; N.T., 11/15/23, at 174-75, 182. The two men proceeded westbound down Benner Street together. N.T., 11/14/23, at 182; N.T., 11/15/23, at 182-83. [Appellant] then pulled out a firearm and shot Johnson twice. N.T., 11/14/23, at 183; N.T., 11/15/23, at 17, 175-76. Johnson was struck in the right side of his chest as well as in the middle of his back. N.T., 11/15/23, at 17. [Appellant] then fled on foot eastbound down Benner Street. N.T., 11/14/23, at 182; N.T., 11/15/23, at 175-76, 183.

Police arrived on the 4600 block of Benner Street at approximately 7:30 p.m.[,] where they observed Johnson lying on the ground with bullet holes in his jacket. N.T., 11/14/23, at 61-63, 65-67, 72. Police transported Johnson to Temple University Hospital, where he was later pronounced dead. *Id.* at 66-68, 78. The medical examiner determined that Johnson's cause of death was gunshot wounds to the torso and his manner of death was homicide. N.T., 11/15/23, at 19. [Appellant] was not licensed to carry a firearm on the date of the murder. N.T., 11/16/23, at 16.

Trial Court Opinion, 4/15/24, at 2-3 (citations modified).

Following Appellant's arrest, the Commonwealth charged him with the above-mentioned offenses. As we explain further below, prior to trial, Appellant had numerous court-appointed counsel, each of whom was granted leave to withdraw due to Appellant's inappropriate conduct. In short, Appellant (a) threatened various counsel; and (b) punched his fourth counsel, George Yacoubian, Esquire (Attorney Yacoubian), during Appellant's first jury

trial in May 2022, which resulted in a mistrial. *See* Trial Court Opinion, 4/15/24, at 7-8 (describing Appellant's prior counsel and Appellant's courtroom misbehavior).

Before Appellant's first trial, on May 3, 2022, the Commonwealth filed a "Motion *in Limine* to Admit 911 Calls." The Commonwealth claimed certain 911 calls placed following the shooting (the 911 calls)[2] were relevant and admissible under exceptions to the rule against hearsay (discussed below). *See generally* Motion *in Limine*, 5/3/22. The Commonwealth proffered the 911 calls were

> relevant and probative of the identification of [Appellant], as well as [the victim's] cause of death. The calls are not excludable under the [rule against] hearsay [], regardless of whether the declarant is available as a witness, because [the 911 calls] were made contemporaneously to the events they describe, before the opportunity for reflection, and there is independent evidence to support their veracity.

*Id.* at 1. Appellant did not respond to the motion *in limine*. The trial court granted the motion *in limine* prior to trial.[3]

_____

[2] There were several 911 calls placed by bystanders close to the scene of the murder, three of which are relevant to this appeal. In two of the 911 calls, the declarants reported hearing gunshots, provided a description of the shooter, and told police the direction in which the shooter had fled. *See* Motion *in Limine*, 5/3/22, at 2-3. The declarant in the third 911 call described the victim's injuries and poor condition. *Id.* at 5.

[3] The record does not include an order or docket entry pertaining to the motion *in limine*, though it is clear the motion was granted, as the Commonwealth played the 911 calls at trial. *See* N.T., 11/4/23, at 58-59.

On October 20, 2023, Appellant filed a "Motion *in Limine* to Introduce Police Misconduct" through his sixth attorney, Joseph Schultz, Esquire (Attorney Schultz or defense counsel).[4]  Specifically, Appellant sought to introduce evidence of police misconduct, in unrelated cases, committed by three Philadelphia Police detectives involved in his case: Detective Freddie Mole (Detective Mole), Detective Joseph Murray (Detective Murray), and Detective Donald Suchinsky (Detective Suchinsky) (collectively, "the three Detectives").   Motion *in Limine*, 10/20/23, ¶¶ 7-10 (detailing the misconduct);[5] **see also id.** ¶¶ 3, 4, 6 (stating in the instant case, "Detectives [] Mole and [] Suchinsky were the first homicide detectives to arrive at the crime scene"; "Detective [] Murray was the affiant of three search warrants"; and "Detective Mole recovered video surveillance footage").  The trial court denied Appellant's motion *in limine* on November 8, 2023.

Appellant's second jury trial occurred on November 13-16, 2023.  Appellant was represented by Attorney Schultz.  Appellant, the sole defense

---

[4] Appellant also filed several *pro se*, handwritten motions *in limine*, while he was represented by counsel.  **See Commonwealth v. Willis**, 29 A.3d 393, 400 (Pa. Super. 2011) (observing the "long-standing policy that precludes hybrid representation." (citation omitted)).

[5] The trial court competently summarized the three Detectives' misconduct in its Pa.R.A.P. 1925(a) opinion.  **See** Trial Court Opinion, 4/15/24, at 5-6.

witness, testified[6] that he shot the victim, but maintained he acted in self-defense or imperfect self-defense.[7]  **See** N.T., 11/15/23, at 174-77.

On November 16, 2023, the jury found Appellant guilty of first-degree murder, as well as the remaining above-mentioned crimes, and the trial court found him guilty of persons not to possess firearms.  The trial court immediately imposed the mandatory sentence of life in prison for the murder charge.[8]  N.T., 11/16/23, at 143.  Prior to sentencing Appellant on the remaining charges (collectively, "the remaining convictions"), the court referenced Appellant's repeated courtroom misconduct, noting "this is an extraordinary case."[9]  **Id.** at 142.  Specifically, the trial court stated Appellant's

---

[6] Appellant testified via pre-recorded video deposition.  Before trial, the trial court ruled Appellant had forfeited his right to give live trial testimony due to his repeated, disruptive courtroom misconduct.  **See** Order, 6/9/23; Trial Court Opinion, 4/15/24, at 7-11; **see also** N.T., 5/9/23, at 43-45 (trial court warning Appellant, prior to the mistrial, that if he continued his disruptive conduct, he would waive his right to give live testimony).

[7] "Unlike the affirmative defense of self-defense, which is a justification for the crime and, if accepted, results in acquittal, a finding of imperfect self-defense results in conviction of the offense of voluntary manslaughter," rather than homicide.  **Commonwealth v. Busanet**, 54 A.3d 35, 52 n.11 (Pa. 2012).

[8] The record does not reveal whether the trial court, in sentencing Appellant, had the benefit of a presentence investigation report.

[9] The trial court also considered the victim impact statements provided by family members of the victim.  **See** N.T., 11/16/23, at 123-26.  Further, the
*(Footnote Continued Next Page)*

behavior is something that is unprecedented, that I've never seen in the history of all my years in my work here…. I have never seen anything like this or anything close to this, and that's why I am going to give [Appellant] consecutive [sentences on the remaining convictions], and that's the reason for [the court's] departing above the [sentencing] guidelines….

*Id.* at 142-43.

With regard to the remaining convictions, the trial court imposed consecutive, statutory maximum[10] terms of 3½ to 7 years' incarceration for firearms not to be carried without a license; 2½ to 5 years' incarceration for carrying a firearm on public property in Philadelphia; 2½ to 5 years' incarceration for PIC; and 10 to 20 years' incarceration for persons not to possess firearms. Thus, Appellant's aggregate sentence was life in prison plus 18½ to 37 years' incarceration.

Appellant timely filed a post-sentence motion on November 20, 2023. Appellant claimed, in relevant part, "[t]he verdict was against the weight of the evidence as there was such conflicting statements and conflicting physical evidence presented by the Commonwealth that the verdict shocks the consci[ence.]" Post-Sentence Motion, 11/20/23, ¶ 3; *see also id.* ¶ 4

_____

court considered Appellant's lengthy allocution, wherein he complained about Attorney Schultz's representation and asserted his innocence. *Id.* at 130-36.

[10] The sentences for each of the remaining convictions constituted the respective statutory maximums. *See* 18 Pa.C.S.A. §§ 1103(1) and (3), 1104(1); *see also* Trial Court Opinion, 4/15/24, at 22 n.4 (explaining the applicable sentencing guidelines).

(asserting the verdicts were not supported by sufficient evidence). On the same date, Appellant filed a motion for reconsideration of sentence. He claimed the trial court abused its discretion in imposing an unreasonably harsh and excessive aggregate sentence, which failed to account for all relevant sentencing considerations. Motion for Reconsideration, 11/20/23, ¶¶ 12-14.

The trial court denied Appellant's post-sentence motion, and motion for reconsideration, on December 28, 2023. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents six issues for our review:

1. Was there insufficient evidence to sustain Appellant's conviction for first-degree murder beyond a reasonable doubt because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense?

2. Was Appellant's conviction for first-degree murder against the weight of the evidence because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense?

3. Did the trial court err by denying Appellant his Constitutional rights to be present and testify at his trial before the jury and cause irreparable harm to Appellant by not allowing Appellant to be present for his trial and testify in front of the jury?

4. Did the trial court err and cause irreparable harm to Appellant by allowing hearsay 911 calls to be admitted over Appellant's objection?

5. Did the trial court abuse its discretion in denying Appellant's request to introduce evidence [related to the three] detectives involved in Appellant's case[,] when several of the detectives, particularly Detective [] Mole, habitually lied and fabricated

evidence and when these detectives played a key role in collecting evidence in Appellant's case, including video surveillance and cell phone evidence?

6. Did the sentencing court abuse[] its discretion in sentencing Appellant to consecutive, non-guideline sentences beyond the mandatory life sentence imposed for first-degree murder?

Appellant's Brief at 4-5 (issues reordered; some capitalization modified).

Appellant first argues his conviction for first-degree murder cannot stand because it is based on insufficient evidence. *See id.* at 21-24. Appellant emphasizes his trial testimony that "he felt threatened by" the victim and claims, "[t]here is no evidence to rebut this." *Id.* at 21; *see also id.* (asserting the surveillance "video of the incident does not in any way rebut Appellant's testimony that he acted in self-defense or unreasonable self-defense."). According to Appellant,

[t]here is insufficient evidence to sustain Appellant's conviction for first-degree [m]urder beyond a reasonable doubt because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense.

*Id.* at 23 (citing N.T., 11/15/23, at 171-212 (Appellant's trial testimony)).

The Commonwealth counters the trial court properly rejected Appellant's sufficiency challenge, as the Commonwealth 1) proved beyond a reasonable doubt all elements of first-degree murder; and 2) disproved Appellant's claim of self-defense. *See* Commonwealth Brief at 31-32. The Commonwealth claims "the jury was permitted to … infer[]" Appellant had the "specific intent to kill based on his use of a deadly weapon" in shooting the

victim.  *Id.* at 32.  The Commonwealth further maintains it "proved that [Appellant] did not act out of self-defense or imperfect self-defense…."  *Id.*

A sufficiency claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary."  *Commonwealth v. Packer*, 168 A.3d 161, 166 (Pa. 2017).  "Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence."  *Commonwealth v. Peters*, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation and brackets omitted); *see also Commonwealth v. Banniger*, 303 A.3d 1085, 1091 (Pa. Super. 2023) ("Our inquiry is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." (citations and quotation marks omitted)).

> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Peters*, 320 A.3d at 1236 (citation omitted).  Further, the Commonwealth "may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."

- 9 -

*Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (citation omitted).

"To convict a defendant of first[-]degree murder, the Commonwealth must prove: a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011) (citations omitted). Our Supreme Court has instructed,

> [a]n intentional killing is one committed by means of poison, lying in wait, or by any other kind of willful, deliberate, and premeditated action. The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill.

*Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007) (internal citations omitted).

Under the Crimes Code, self-defense is a defense of justification, which is a complete defense to criminal liability. *See* 18 Pa.C.S.A. §§ 502, 505. "While there is no burden on a defendant to prove [a] claim [of self-defense], before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

> Self-defense is a complete defense to a homicide charge if (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; (2) the defendant did not provoke the threat that resulted in the slaying; and (3) the defendant did not violate a duty to retreat. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three

- 10 -

elements is absent. If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.

*Commonwealth v. Jones* 271 A.3d 452, 458 (Pa. Super. 2021) (internal citations omitted). Moreover, the fact-finder "is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense." *Id.* (citing *Houser*, 18 A.3d at 1135).

Here, the trial court stated in its Pa.R.A.P. 1925(a) opinion that the evidence was sufficient to sustain Appellant's first-degree murder conviction and disprove his claim of self-defense:

> [Appellant's] argument that the Commonwealth failed to disprove his claim of self-defense is frivolous. While [Appellant] testified that he acted in self-defense, his testimony was contradicted by [defense] counsel's entire trial strategy as well as [Appellant's] own *pro se* pleadings.
>
> Defense counsel's opening statement unequivocally presented a theory of misidentification. *See* N.T., 11/14/23, at 52-56. In fact, in his opening statement, [defense] counsel stated[,] "this [case] is all about the identification … [m]ake no other qualms about it … the video says what happens. You're going to see what happens. The question now before you is, who did it?" *Id.* at 55. Furthermore, the Commonwealth cross-examined [Appellant] with numerous *pro se* pretrial pleadings that were inconsistent with a self-defense theory. *See* N.T., 11/15/23, at 191-98. [Appellant] admitted that none of those pretrial pleadings were consistent with his testimony regarding self-defense. *Id.* at 193-95. Additionally, [Appellant] testified that it was defense counsel's strategy not to raise self-defense and that, while he disagreed with defense counsel, he believed that he needed to comply with defense counsel's theory of the case in

- 11 -

order to win pretrial motions and effectively litigate the case. *Id.* at 186, 193-94.[FN1]

---

[FN1] During sentencing, [Appellant] conceded that his testimony regarding self-defense was false, and maintained that he perjured himself, pursuant to the advice of [defense] counsel, in order to obtain a manslaughter instruction. *See* N.T., 11/16/23, at 130.

---

Moreover, [Appellant's] testimony, which was the only evidence presented suggesting that [Appellant] acted in self-defense, was refuted by the other evidence presented at trial. Most importantly, **the surveillance video did not show that Johnson had a weapon or that he made any threatening motions toward** [**Appellant**] during any of their interactions. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). There was no evidence presented at trial showing that Johnson possessed a weapon on the night of the shooting. Furthermore, while [Appellant] testified that Johnson told him to walk up Benner Street to a dark location, which was the reason that [Appellant] stated he feared Johnson would rob and kill him, the video showed [Appellant] motion for Johnson to walk up Benner Street and, as the two men began to walk up Benner Street, [Appellant] led the way. N.T., 11/15/23, at 174-77; Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). Additionally, while [Appellant] testified that Johnson was reaching into his pockets, [**Appellant**] **never stated that he saw Johnson with a weapon.** *See* N.T., 11/15/16, at 171-212. In sum, the video shows [Appellant], unprovoked, pull out a firearm and shoot the unarmed victim, [] then flee down Benner Street. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video).

[**Appellant's**] **testimony that he acted in self-defense was also undermined by his paradoxical denial that he was the shooter in the surveillance video**. While [Appellant] admitted to shooting Johnson, he denied that he was the shooter depicted in the surveillance video. N.T., 11/15/23, at 174-77, 182-83, 198-211. However, the Commonwealth convincingly established that [Appellant] was the man in the video. The video clearly captured the face of the shooter, which looked exactly like [Appellant]. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); Commonwealth Exhibit C-2

- 12 -

(Photograph of [Appellant]).[FN2] Furthermore, the shooter approached Joe's Market from the east side of Torresdale Avenue, which was consistent with where [Appellant] lived at the time of the murder. Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); N.T. 11/15/23 at 172, 201-02. Additionally, the shooter appeared taller than Johnson, who was six-foot-four-inches tall. Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); N.T., 11/15/23, at 19. [Appellant] is six-foot five-inches tall. N.T., 11/15/23, at 118; Commonwealth Exhibit C-34 (Pennsylvania Certified Driver History).

---

[FN2] Since [Appellant] was not present in court with the jury, the Commonwealth published Exhibit C-2 so the jury could see [Appellant's] face.

---

Furthermore, **cell phone records also corroborated that [Appellant] was the shooter** depicted in the video. The Commonwealth presented a cell phone extraction of the phone found next to the [victim]. N.T., 11/15/23, at 76-77. The extraction included phone calls and text messages between the phone found next to the [victim] and the number registered to [Appellant]. *Id.* at 77. These calls and text messages occurred on December 16, 2017, the date of the murder, between approximately 5:50 p.m. and 7:20 p.m. *Id.* at 81-86; Commonwealth Exhibit C-20 (Phone Extraction Report). These text messages and calls lined up with actions the shooter took on the video. *See* Commonwealth Exhibit C-20 (Phone Extraction Report); Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). For example, at approximately 7:18 p.m., the shooter is seen making a phone call on the surveillance video. Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). The call records show that a call was placed at approximately 7:18 p.m. from the number associated with [Appellant] to the phone found next to the [victim]. Commonwealth Exhibit C-20 (Phone Extraction Report).

All of this was compelling proof that completely refuted [Appellant's] claim of self-defense. Furthermore, based upon the evidence adduced at trial by both the Commonwealth and defense, [**Appellant's**] **testimony that he acted in self-defense was utterly incredible**. The jury was free to reject his

- 13 -

testimony. **See Ramtahal**, 33 A.3d at 607.

Trial Court Opinion, 4/15/24, at 16-19 (emphasis added; footnotes in original; some citations and capitalization modified). The trial court additionally found that Appellant's use of a deadly weapon on a vital part of the victim's body "was sufficient evidence to show that [Appellant] acted with specific intent to kill." **Id.** at 19; **see also Rega**, 933 A.2d at 1009.

Our review confirms the trial court's reasoning is supported by the record and we agree with its conclusion. **See id.** at 16-19. Appellant essentially asks us to 1) ignore the evidence of his guilt (including compelling surveillance video); 2) reweigh the evidence, viewed in a light most favorable to him; and 3) substitute our judgment for that of the jury and credit Appellant's justification defense. This we cannot do. **See Jones** 271 A.3d at 458 (stating **the fact-finder "is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense."** (emphasis added)). Because the Commonwealth clearly produced sufficient, overwhelming evidence establishing all elements of first-degree murder beyond a reasonable doubt, his sufficiency challenge does not merit relief.

In his second issue, Appellant argues the jury's verdict of guilty for first-degree murder is against the weight of the evidence.[11]  ***See*** Appellant's Brief at 24-27.   Appellant repeats essentially the same argument he raised in connection with his sufficiency challenge.  Namely, he 1) emphasizes his trial testimony that "he felt threatened by" the victim and "feared for his safety prior to shooting" him, ***id.*** at 24, 27; and 2) claims "video of the incident does not in any way rebut Appellant's testimony that he acted in self-defense or unreasonable self-defense."  ***Id.*** at 27.  Accordingly, Appellant contends the trial court erred in denying his post-sentence motion for a new trial.  ***Id.***

The Commonwealth counters the trial court properly exercised its discretion in rejecting Appellant's weight claim.  ***See*** Commonwealth Brief at 32-34.  "Because the evidence demonstrating that [Appellant] did not act out of self-defense or imperfect self-defense was overwhelming, [Appellant's weight] claim is meritless."  ***Id.*** at 32; ***see also id.*** at 33 (correctly pointing out "the only evidence [Appellant] proffered that he acted out of self-defense or imperfect self-defense was his own testimony.").   According to the Commonwealth, the "verdict did not shock the consci[ence] because the jury accepted the objective facts rather than [Appellant's] self-contradicting testimony."  ***Id.*** at 34.

_____

[11] Appellant preserved this issue, as required by Pa.R.Crim.P. 607, by raising it with the trial court in a post-sentence motion.  ***See*** Post-Sentence Motion, 11/20/23, ¶ 3.

We review a trial court's ruling on a challenge to the verdict as against the weight of the evidence for an abuse of discretion. ***Banniger***, 303 A.3d at 1095; ***see also Commonwealth v. Harrington***, 262 A.3d 639, 646 (Pa. Super. 2021) ("An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." (citation omitted)).

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a palpable abuse of discretion will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (internal citations, emphasis, and quotation marks omitted); ***see also Commonwealth v. Sanchez***, 262 A.3d 1283, 1288 (Pa. Super. 2021) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate

court to substitute its judgment based on a cold record for that of the trial court."). "It is well settled that the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses…." *Commonwealth v. James*, 297 A.3d 755, 768 (Pa. Super. 2023) (citation omitted).

Here, the trial court opined it properly exercised its discretion in rejecting Appellant's weight claim, and found the guilty verdict for first-degree murder was amply supported by the evidence and did not shock the court's conscience. *See* Trial Court Opinion, 4/15/24, at 20. We decline Appellant's invitation to assume the role of the fact-finder, reweigh the evidence on appeal, and usurp the jury's credibility determinations concerning, *inter alia*, Appellant's self-serving and self-contradictory trial testimony. Upon review, we conclude the trial court properly exercised its discretion in denying Appellant's weight claim. *See Commonwealth v. Scott*, 146 A.3d 775, 778 (Pa. Super. 2016) (stating an appellate court will not disturb the fact-finder's credibility findings that are supported by evidence of record); *Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009) (holding trial court properly exercised discretion in denying a weight challenge where the appellant asked this Court to reweigh the evidence). Consequently, Appellant's second issue merits no relief.

In his third issue, Appellant claims the trial court unlawfully deprived him of his right to be physically present for trial. *See* Appellant's Brief at 12-

14. Although Appellant concedes he "had engaged in courtroom misconduct previously," *id.* at 12, he maintains "there was minimal misconduct in the second trial and denial of the right to be present and testify before the jury prejudiced Appellant." *Id.* According to Appellant, "[t]he trial court abused its discretion and Appellant was harmed because the jury could only assume that Appellant was guilty because he could not even be in the courtroom." *Id.* at 14; *see also id.* ("Alternative measures were not adequately considered.").

The Commonwealth conversely argues the trial court did not violate Appellant's right to be physically present during trial, as he had forfeited this non-absolute right due to his repeated courtroom misconduct. *See* Commonwealth Brief at 16-21.

> [Appellant's] egregiously disruptive, violent, and threatening behavior, even after [a] warning from the [trial] court, fully supported the trial court's conclusion that [Appellant] had forfeited his right to be present. Given [Appellant's] behavior throughout his case, it was exceedingly likely that that he would again engage in threatening or disruptive behavior before the jury if permitted to testify in-person. Thus, the court fashioned a reasonable alternative that preserved [Appellant's] rights to testify. Accordingly, neither his right to be present nor his right to testify were violated.

*Id.* at 16. The Commonwealth points out Appellant "cites no authority to suggest that a court must overlook the prior behavior of a defendant after that very behavior led to a mistrial." *Id.* at 18.

It is well-settled that "[a] criminal defendant has both a rule-based right to be present for trial, Pa.R.Crim.P. 602, as well as a constitutional right." *Commonwealth v. Tejada*, 188 A.3d 1288, 1293 (Pa. Super. 2018); *see*

- 18 -

*also Commonwealth v. Kelly*, 78 A.3d 1136, 1141 (Pa. Super. 2013)

(explaining the constitutional right). However, this right is not absolute.

*Tejada*, 188 A.3d at 1293.

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Id.* (citation omitted); *see also Commonwealth v. Baldwin*, 58 A.3d 754,

764 (Pa. 2012) (stating while a defendant has the right to testify, this right

"is not without parameters, and cannot be used as a vehicle for a defendant

to obviate the rules of trial procedure and evidence."). "[A] judge has the

responsibility and authority to maintain in the courtroom the appropriate

atmosphere for the fair and orderly disposition of the issues presented."

*Commonwealth v. Chester*, 587 A.2d 1367, 1379 (Pa. 1991).

Here, the trial court opined it did not violate Appellant's rights or err in

ruling he had forfeited his right to give live trial testimony:

> [Appellant] forfeited his right to be present through his disorderly, disruptive and disrespectful behavior. [Appellant] was originally represented by privately retained counsel, Allan Sagot, Esquire, who moved to withdraw after claiming [Appellant] failed to pay him. [Appellant's] next four appointed attorneys all withdrew due to [Appellant's] behavior. Attorney Deborah Nixon complained of hostile telephone calls from [Appellant] in which [Appellant] screamed, used profanity, threatened "to sabotage" her, and stated there would be a "gang war" with her. N.T., 8/26/19, at 15-20. Attorney Benjamin Cooper, the next to serve, withdrew after [Appellant] accused him of collaborating with the prosecution and filed a complaint about him with the FBI. … Attorney Eileen

Hurley, who took over next, withdrew after [Appellant] made threats against her.

On May 9, 2022, [Appellant's] initial jury trial began before the Honorable Barbara McDermott. [Attorney] Yacoubian … represented [Appellant]. Based upon [Appellant's] long history of issues with prior counsel, the court asked [Appellant] if he was ready to proceed with [Attorney] Yacoubian representing him. N.T., 5/9/22, at 12-14. [Appellant] confirmed that he was ready to proceed. *Id.* After the jury was sworn in, as [Appellant had] entered his not guilty plea, [Appellant] stated that [Attorney] Yacoubian was "railroading" him and had not subpoenaed witnesses. *Id.* at 40-42. The court cleared the jurors from the courtroom. *Id.* At that time, [Appellant] warned [Attorney] Yacoubian not to "play with [him]." *Id.* at 41-42. [Attorney] Yacoubian asked [Appellant] if [Appellant] was threating him, to which [Appellant] responded, "I said don't play with me." *Id.* The court then warned [Appellant] that if he had another outburst he would be removed from the courtroom. *Id.* at 42-43. [Appellant] confirmed he understood the warning. *Id.* at 44-46.

Two days later, on May 11, 2022, as the Commonwealth called its first witness of the day's proceedings, [**Appellant**] **punched** [**Attorney**] **Yacoubian in the face**. N.T., 5/11/22, at 14-16. The court immediately removed the jurors from the courtroom and sent them to the courtroom next door. *Id.* at 14-19, 24. [Appellant] was removed from the courtroom by the sheriff and placed in the lockup located in the [cell block] next to the courtroom [(adjacency lockup)]. *Id.* at 17[; *see also id.* at 23-24 (trial court stating the configuration "of the courtroom … is such that the cell block is immediately next to the courtroom."). Appellant] then began screaming from the adjacency lockup. *Id.* [at 17. Appellant] accused Judge McDermott of colluding with the District Attorney's Office. *Id.* at 17-21. Moreover, [Appellant] began threatening [Attorney] Yacoubian's family stating, "I know where your kids are at, George" and "I don't know why you would do this, George. You know I know where your fucking family lives at, George." *Id.* at 17-21. [Appellant] then began yelling juror numbers and stating "y'all know what y'all are doing." *Id.* at 22-23. At that point, Judge McDermott had [Appellant] removed from the adjacency lockup to the court's main holding center. *Id.* at 22-26.

Judge McDermott brought the jurors back into the courtroom to explain the delay and then individually colloqu[i]ed them about whether they could still be fair. *Id.* at 30-56. During the individual colloquies, it became apparent that the jurors had seen [Appellant] punch [Attorney] Yacoubian, heard [Appellant's] threats and shouting from the [adjacency lockup], and felt threatened by [Appellant's] behavior. *Id.* Out of fourteen jurors, only two stated they could potentially still be fair. *Id.* [Attorney] Yacoubian motioned for a mistrial and the court granted [Attorney] Yacoubian's motion. *Id.* at 19, 56-60.

At a status listing on February 16, 2023, Judge McDermott again had to remove [Appellant] from the courtroom after [Appellant] continued to interrupt the court and accused Judge McDermott of lying. N.T., 2/16/23, at 27. As sheriffs removed [Appellant], he began mouthing words and yelling obscenities at the court. *Id.* at 28. A court officer reported to the court that [**Appellant**] **was mouthing the phrase "I will kill you" to Judge McDermott** as [Appellant] was removed from the courtroom. *Id.* at 33. As sheriffs removed [Appellant] from the adjacency lockup to the main holding center located in the basement of the courthouse, [Appellant] threatened Judge McDermott again by stating "[b]itch, you've got something to worry about, not the lawyer." *Id.* at 34-35. Based upon this behavior, Judge McDermott recused herself from the case and the case was reassigned to the [] judge [who authored the Pa.R.A.P. 1925(a) opinion, the Honorable Glenn B. Bronson.]

On June 9, 2023, th[e trial] court issued an order, which outlined [Appellant's] long history of misbehavior and ordered that [Appellant] had forfeited his right to be present for trial as well as his right to proceed *pro se*. However, the court agreed to allow [Appellant] to be present in the courthouse during his trial and watch it via audio-visual transmission from the adjacency lockup. The court moved [Appellant's] trial to a larger courtroom[,] where the adjacency lockup is located farther from the jury box so that the jurors would not be able to hear [Appellant] if he yelled disruptive threats as he had in the initial trial. Additionally, the court arranged to have a camera capture a live feed of the proceedings, which would be broadcasted directly to [Appellant] in the adjacency lockup.

[Appellant's] trial began with jury selection on November 13, 2023, under the aforementioned restrictions. The next day,

just minutes after the jury was sworn in as the court gave preliminary instructions, [Appellant] began yelling from the adjacency lockup. N.T., 11/14/23, at 14. Unfortunately, even in the larger courtroom, [Appellant] was able to yell loud enough to be heard by the jurors. The court immediately removed the jurors from the courtroom. ***Id.*** As the court heard argument from counsel regarding whether [Appellant] could remain in the adjacency [lockup] going forward, [Appellant] continuously yelled from the adjacency [lockup] and disrupted the proceedings. ***Id.*** at 14-21. At that point, the court ruled that [Appellant] had forfeited his right to be present in the adjacency [lockup] with a live feed of the proceedings. ***Id.*** at 15-20. The court had [Appellant] removed from the adjacency lockup to the court's main holding center. ***Id.*** at 21-22. Once [Appellant] was removed, the jurors were brought back to the courtroom. ***Id.*** at 24. After consulting with both defense counsel and the assistant district attorney, the court informed the jurors that "[w]e did have a slight disturbance, which has been rectified, so we're going to continue on now with our trial." ***Id.*** at 22-24.

Therefore, [**Appellant's**] **long history of outrageous behavior necessitated a trial *in absentia***. In [Appellant's] first trial, he physically assaulted [Attorney Yacoubian] in full view of the jury and then threatened jurors …, which caused a mistrial. At a later status hearing, [Appellant] threatened to kill the [Judge] McDermott, which caused Judge McDermott to recuse herself from the case. After the case was reassigned …, **the [trial] court attempted to make every accommodation to balance [Appellant's] right to be present with the need to try the case fairly. Even under such accommodations, [Appellant] still could not maintain proper decorum and had to be removed in order to prevent another mistrial.** Since [Appellant] forfeited his right to be present through his behavior in the courtroom, the court did not err in barring [Appellant] from the courtroom during his trial. ***See Tejada***, 188 A.3d at 1293-94.

Trial Court Opinion, 4/15/24, at 7-11 (emphasis added; some citations and capitalization modified).

The trial court continued:

- 22 -

Additionally, having forfeited his right to be present in the courtroom, [Appellant] necessarily forfeited his right to testify in front of the jury. Nonetheless, the [trial c]ourt permitted [Appellant] to testify by recorded trial deposition, which obviated the concern that [Appellant] would misbehave in order to cause another mistrial. [Appellant's] testimony was taken in a manner similar to a Pa.R.Crim.P. 500 preservation hearing.[12] [Appellant's] testimony was recorded on video in the courtroom. All parties were situated exactly as they would have been at trial, with the sole exception that the jury was not present. Both the attorney for the Commonwealth as well as defense counsel conducted the questioning…. Furthermore, the [c]ourt did not require the [Appellant] to decide whether to testify until after the Commonwealth had rested.

*Id.* at 11-12 (footnote added).

Our review discloses the trial court's cogent reasoning is supported by the law and the record, and we agree with its conclusion. *See id.* at 7-12; *see also Tejada*, 188 A.3d at 1293.

Moreover, Appellant cannot show prejudice, as the trial court issued several cautionary instructions to the jury regarding Appellant testifying by video in lieu of live testimony. Specifically, prior to jury selection, the court instructed as follows:

The defendant in this case, ladies and gentlemen, is [Appellant]. And as you folks can see he is not here in this courtroom. He is, however, able to see and hear everything that is going on during this trial through an audio-visual system that we have set up here in this courtroom.

_____

[12] Rule 500 provides, in relevant part, a trial court "may order the taking and preserving of the testimony of any witness who may be unavailable for trial …, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved." Pa.R.Crim.P. 500(A)(1).

In addition, he will be able to confer with his attorney, [Attorney] Schultz, here throughout the course of this trial. Now, the reason that we are proceeding in this fashion is not something you should concern yourselves with. I need you folks to understand -- and this is important -- that it is completely lawful for us to proceed in this way under the circumstances of this case.

In addition, folks, if you are selected to be on this jury **you may not in any manner consider the fact that** [**Appellant**] **is attending the trial through audio-visual communication when you're making your decision in this case. In other words, you may not hold it against** [**Appellant**] or against the Commonwealth or against anybody else connected with this case.

N.T., 11/13/23, at 19-20 (emphasis added).

Moreover, the trial court questioned the prospective jurors prior to jury selection:

**Is there anybody here who believes that because** [**Appellant**] **will be participating in this trial through audio-visual communication and will not be here in the courtroom that you would be unable to be a fair and an impartial juror in this case**, in other words, [Appellant's] absence from the courtroom would substantially interfere with or prevent you from being a fair and an impartial juror?

*Id.* at 25 (emphasis added). No juror responded in the affirmative. *Id.*

Before Appellant's recorded testimony was played for the reconvened jury, the trial court again instructed the jury:

[Appellant] has decided to testify in this case, and you are going to hear from him. However, for logistical purposes that need not concern you, you will be hearing his testimony by way of what we call a trial deposition, which is completely lawful in this case. What this means is that this testimony was recorded today after the Commonwealth presented all of its evidence and rested, okay? That's why we had this long break.

[Attorney] Schultz was there to ask questions on direct examination; … the assistant district attorney[] cross-examined

- 24 -

[Appellant]; and I was there to rule on any objections. And **I instruct you to consider this testimony just as if you were sitting here live and listening to it.** You may not hold it against [Appellant] or the Commonwealth or anyone else connected with this case that the testimony is being presented in this fashion, okay?

N.T., 11/15/23, at 217-18 (emphasis added); *see also* N.T., 11/16/23, at 57-58 (trial court's final charge to the jury, wherein it repeated essentially the same instructions detailed *supra*).[13]

It is well established that a jury is presumed to follow a trial court's instructions. *Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004) ("It is presumed the jury follows [a trial] court's instructions."); *Commonwealth v. Watkins*, 843 A.2d 1203, 1216 (Pa. 2003) (stating a jury "is assumed to have followed" a cautionary instruction, and such an instruction "is presumed to be sufficient to cure any prejudice"). Based on the foregoing, there is no merit to Appellant's claim he was unlawfully tried *in absentia*.

In his fourth issue, Appellant contends the trial court erred in granting the Commonwealth's motion *in limine* and admitting inadmissible hearsay evidence in the form of the 911 calls. *See* Appellant's Brief at 14-20. Appellant claims that a "verdict based in any material respect on inadmissible hearsay is unreliable because inadmissible hearsay by definition is unreliable."

_____

[13] We note Attorney Schultz did not object to the trial court's cautionary instructions. *See Commonwealth v. Page*, 965 A.2d 1212, 1222 (Pa. Super. 2009) ("Because [a]ppellant did not object to the [trial court's cautionary] instruction, any claim in relation to its adequacy is waived.") (citations omitted).

*Id.* at 19 (emphasis omitted).  Appellant contends the trial court's erroneous ruling "caused irreparable harm to Appellant." *Id.* at 20.

Appellant's claim implicates the admissibility of evidence and the trial court's ruling on the Commonwealth's motion *in limine*; we review such rulings for an abuse of discretion.  *Commonwealth v. Mangel*, 181 A.3d 1154, 1158 (Pa. Super. 2018); *see also Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (stating the "standard of review for a trial court's evidentiary rulings is narrow" (citation omitted)).

"Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802 (rule against hearsay).  "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2)) (ellipses and quotation marks omitted).

One hearsay exception, the present sense impression exception, applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.E. 803(1).  The rationale for the present sense impression exception is that the "[r]elative immediacy of the declaration ensures that there will have been little opportunity for reflection or calculated misstatement." *Commonwealth v.*

*Coleman*, 326 A.2d 387, 389 (Pa. 1974); *see also id.* ("The declaration is instinctive, rather than deliberative[.]" (citation and quotation marks omitted)). Notably, this Court has held a 911 call may qualify as a present sense impression if the call was placed contemporaneously with the event or is so instantaneous "that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." *Commonwealth v. Cunningham*, 805 A.2d 566, 573 (Pa. Super. 2002); *see also Commonwealth v. Harris*, 658 A.2d 392, 395 (Pa. Super. 1995) (stating the present sense impression exception does not require that the comments be made to another person also present at the scene; rather, the comments may be made over the telephone).

Instantly, the trial court opined Appellant had waived this claim because he never objected to admission of the 911 calls. *See* Trial Court Opinion, 4/15/24, at 13-14; *see also Commonwealth v. Montalvo*, 956 A.2d 926, 936 (Pa. 2008) (stating that in order to preserve a claim on appeal, a party must lodge a timely objection at trial). Specifically, the trial court reasoned:

> The admissibility of the 911 calls was the subject of a motion *in limine* filed by the Commonwealth on May 3, 2022. *See* Commonwealth's Motion *in Limine* to Admit 911 Calls, 5/3/22.[14] At the beginning of [Appellant's] first trial, on May 9, 2022, after jury selection, … [Judge] McDermott addressed the Commonwealth's motion. N.T., 5/9/22, at 31. However, [Attorney] Yacoubian, [] who was [Appellant's] counsel at that

_____

[14] Appellant did not respond to the motion *in limine*.

time, **explicitly did not object to the admissibility of the 911 calls**. *Id.* at 31 ("Your honor, I'm not objecting at this point to the 911 calls."). The Commonwealth later published the [911] calls to the jury without objection from [Attorney Yacoubian]. N.T., 5/10/22, at 37-38. As stated above, [Appellant's] first trial ended in a mistrial and Judge McDermott later recused herself.

During [Appellant's] second trial, … [Attorney] Schultz objected to the admission of the [911] calls and **incorrectly** stated, "the 911 calls… they've already been the subject of prior motions *in limine* prior to the previous trial, and they've all been admitted by Judge McDermott." N.T., 11/14/23, at 58, 82-85. The [c]ourt stated that anything that was previously litigated in front of Judge McDermott is the law of the case and is "preserved to the extent that you raised them in the *in limine* motions" and "to the extent that [Judge McDermott] ruled on them *in limine*." *Id.* at 83-84[; *see also Commonwealth v. Lancit*, 139 A.3d 204, 206 (Pa. Super. 2016) (the "law of the case doctrine bars a judge from revisiting rulings previously decided by another judge of the same [or a higher] court, absent exceptional circumstances." (citation omitted; some capitalization modified)); *Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005) (*en banc*).]

Since [Attorney] Yacoubian never objected to the admissibility of the 911 calls, Judge McDermott never ruled on the Commonwealth's motion. Furthermore, while [Attorney] Schultz purported to object to the admissibility of the [911] calls, he incorrectly represented that the motion [*in limine*] had been litigated by prior counsel in front of Judge McDermott. As a result, the [] judge [who presided over Appellant's second trial] never had an opportunity to rule on the admissibility of the [911] calls. **Since neither Judge McDermott nor the** [**subsequent**] **judge ruled on the admissibility of the calls, the issue was not preserved.** Pa.R.E. 103(a); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Stevenson*, 894 A.2d 759, 766 (Pa. Super. 2006), *appeal denied*, 917 A.2d 846 (Pa. 2007) (same).

Trial Court Opinion, 4/15/24, at 13-14 (emphasis and footnote added; some citations modified). The trial court's reasoning is supported by the record and the law. *See id.* Accordingly, Appellant's claim is waived.

Nevertheless, even if this claim was not waived, we would conclude it lacks merit. Consistent with **Cunningham**, *supra*, the trial court properly admitted the 911 calls under the present sense impression exception. **Cunningham**, 805 A.2d at 573 (holding 911 calls were admissible under present sense impression exception); **see also** Appellant's Brief at 20 (citing **Cunningham** and conceding, "911 calls may be admitted for, *inter alia*, … present sense impression reasons."). We are persuaded by the Commonwealth's argument in its brief:

> Because each of the declarants [in the 911 calls] described what they were actively observing or what they had observed immediately before making the call, all three 911 calls were properly admitted as present sense impression.
>
> The Commonwealth also offered independent corroborating evidence that the [911] callers actually perceived the events they describe[d]. Surveillance footage showed [Appellant] wearing the same clothing as described in the calls and running in the same direction as the calls report. (N.T.[,] 11/14/23, 182; 194–96). Furthermore, the medical examiner testified that [the victim] endured two gunshot wounds, consistent with [the 911] callers['] descriptions of what they heard. (N.T.[,] 11/15/23, 13–19).

Commonwealth's Brief at 23-24.

Based on the foregoing, Appellant's challenge to the trial court's admission of the 911 calls is waived, and also lacks merit. Appellant's fourth issue merits no relief.

In his fifth issue, Appellant contends the trial court improperly denied his motion *in limine* to introduce evidence of the three Detectives' misconduct in unrelated cases. *See* Appellant's Brief at 10-12. Appellant points out that "Detective[s] Mole and Murray have been charged with perjury and [Detective] Suchinsky has been charged with sex crimes." *Id.* at 10; *see also* Motion *in Limine*, 10/20/23, ¶¶ 7-10 (detailing misconduct). According to Appellant, the three Detectives 1) "habitually lied and fabricated evidence" in other cases; and 2) "played a key role in collecting evidence in Appellant's case, including video surveillance and cell phone evidence." *Id.* at 11-12. Appellant argues the prior misconduct of the three Detectives is admissible as habit evidence, pursuant to Pa.R.E. 406, which provides as follows:

> Evidence of a person's habit … may be admitted to prove that on a particular occasion the person … acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or there was an eyewitness.

*Id.*; *see also* Appellant's Brief at 11. Appellant complains, "[a]bsent cross-examination or inquiry, it is impossible to assess [the] taint" that the three Detectives' misconduct may have had upon Appellant's right to a fair trial. Appellant's Brief at 12.

The Commonwealth counters Appellant waived this claim, as he raises it for the first time on appeal and did not preserve it. *See* Commonwealth Brief at 14-15. The Commonwealth cites Pa.R.A.P. 302(a) (providing issues not raised in the lower court are waived and cannot be raised for the first time

on appeal), and ***Commonwealth v. Le***, 208 A.3d 960, 971-72 (Pa. 2019) (citing Rule 302(a) and stating, "where a defendant raises an objection before the trial court on specific grounds, only those grounds are preserved for appeal." (citation omitted)). Commonwealth Brief at 14-15. The Commonwealth correctly points out:

> Although [Appellant's] counsel filed a motion *in limine* before the trial court regarding [the three Detectives'] misconduct, [Appellant] never suggested that the misconduct was admissible as habit evidence[,] but rather[,] vaguely argued that it should be admitted "to impeach [the] witnesses and further [Appellant]'s defenses of improper collection[.]"

***Id.*** at 15 (quoting Motion *in Limine*, 10/20/23, ¶ 14).

The record confirms the Commonwealth's assertion. Accordingly, consistent with ***Le*** and Pa.R.A.P. 302(a), Appellant has waived his challenge pertaining to admissibility of habit evidence related to the three Detectives' misconduct. Nevertheless, even if this issue was not waived, we would conclude the trial court properly denied Appellant's motion *in limine* based upon the thorough reasoning in its Rule 1925 opinion. ***See*** Trial Court Opinion, 4/15/24, at 3-7.

In his sixth and final issue, Appellant argues the trial court abused its discretion in "sentencing Appellant to consecutive, non-guideline sentences beyond the mandatory life sentence imposed for first-degree [m]urder." Appellant's Brief at 28. Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. ***See Commonwealth v. Lawrence***, 313 A.3d 265, 286 (Pa. Super. 2024)

("Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." (citation and brackets omitted)). Rather, where, as here, the appellant preserved his sentencing challenge in a timely motion for reconsideration of sentence, he must (a) include in his appellate brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal; and (b) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Commonwealth v. Summers*, 245 A.3d 686, 691 (Pa. Super. 2021).

Here, Appellant's brief includes a Rule 2119(f) statement. *See* Appellant's Brief at 28-30. Therein, he claims the trial court abused its discretion in imposing an unreasonable sentence "without adequate justification," which was "indicative of a rigid, solitary focus on retribution." *Id.* at 29, 30. These claims present a substantial question. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question."); *Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011) (holding a claim the sentencing court failed to state sufficient reasons for imposing statutory maximum sentences, as required by the Sentencing Code, presents a substantial question); *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (stating a claim that the sentencing court "exceeded the recommended range in the Sentencing Guidelines without an adequate basis

raises a substantial question"). [15] Accordingly, we review the merits of Appellant's challenge to his sentence.

Our standard of review of a discretionary sentencing challenge is well settled: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Reid*, __ A.3d __, 2024 PA Super 200, at *6 (Pa. Super. 2024) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citation and quotation marks omitted); *see also*

_____

[15] However, a sentencing court's

> exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, **the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances**, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015) (emphasis added; internal citations and quotation marks omitted)); *see also Commonwealth v. Morrobel*, 311 A.3d 1153, 1157 (Pa. Super. 2024) (observing "in most cases, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." (citation and quotation marks omitted)).

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014) ("[T]he sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." (citations and quotation marks omitted)). A sentencing court "has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." *Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013) (citation omitted).

In every case where, as here, "a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence." *Commonwealth v. Shull*, 148 A.3d 820, 835-36 (Pa. Super. 2016) (citation omitted); *see also Commonwealth v. Snyder*, 289 A.3d 1121, 1127 (Pa. Super. 2023) (stating sentencing guidelines are "purely advisory in nature," and a "sentencing court is permitted to deviate from the sentencing guidelines" where it places "on the record its reasons for the deviation." (citations omitted)). When doing so,

> a trial judge … [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact

on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

**Commonwealth v. Bowen**, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted).

This Court has explained the sentencing guidelines

have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors – they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

**Commonwealth v. Holiday**, 954 A.2d 6, 13 (Pa. Super. 2008) (citation omitted). **But see also Commonwealth v. Rodda**, 723 A.2d 212, 216 (Pa. Super. 1999) (*en banc*) (holding the record must demonstrate "with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.").

The Sentencing Code directs a trial court to follow the general principle that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); **see also Coulverson**, 34 A.3d at 145 (observing a sentencing court "is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due

consideration by the court of the statutory considerations enunciated in that section." (citations and brackets omitted)).

Further, it "is well settled that 'imposition of consecutive rather than concurrent sentences rests within the trial court's discretion.'" ***Commonwealth v. Foust***, 180 A.3d 416, 434 (Pa. Super. 2018) (quoting ***Commonwealth v. Harvard***, 64 A.3d 690, 703 (Pa. Super. 2013)); ***see also Hill***, 66 A.3d at 370.

> Although Pennsylvania's system stands for individualized sentencing, **the court is not required to impose the "minimum possible" confinement**. Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.

***Commonwealth v. Brown***, 249 A.3d 1206, 1216 (Pa. Super. 2021) (citation omitted; emphasis added). "An appellant is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." ***Lawrence***, 313 A.3d at 286 (emphasis added; citation and brackets omitted); ***see also Foust***, 180 A.3d at 434-35 (collecting cases and stating, "extensive case law in this jurisdiction holds that defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence.").

Here, Appellant claims the trial court abused its discretion in imposing unreasonable, consecutive sentences on the remaining convictions, which were above the sentencing guidelines, "without adequate justification." Appellant's Brief at 31. According to Appellant, "[t]here is a singular and excessive focus on retribution." ***Id.***

- 36 -

The Commonwealth counters the trial court did not abuse its discretion in imposing consecutive, statutory maximum sentences under the circumstances. *See* Commonwealth's Brief at 34-37. According to the Commonwealth, the trial court "thoroughly explained its rational[e] for imposing consecutive maximum sentences for the remaining" convictions. *Id.* at 34. The Commonwealth contends the court appropriately "considered the totality of the circumstances surrounding [Appellant's] convictions, including his repeated threatening and disruptive behavior at trial." *Id.* at 37.

The trial court opined it properly exercised its discretion in imposing a reasonable aggregate sentence under the circumstances:

> Here, the court was required to impose the mandatory term of life in prison without the possibility of parole for [Appellant's] first[-]degree murder conviction. [Appellant's] sentences of 3½ to 7 years['] incarceration for carrying a firearm without a license, 2½ to 5 years['] incarceration for carrying a firearm in public or on the public streets of Philadelphia, 2½ to 5 years['] incarceration for PIC, and 10 to 20 years['] incarceration for possession of firearm by a prohibited person were all departures above the guidelines. In fashioning these sentences, **the court explicitly considered everything presented during the history of the case.** N.T.[,] 11/16/23[,] at 138. This included all the evidence presented at trial, the information presented in both counseled and *pro se* pretrial pleadings, and everything presented at sentencing[,] including the statements [Appellant] made before and during the hearing. *Id.* The court also took into account the required statutory factors. *Id.* at 138-39[; *see also* 42 Pa.C.S.A. § 9721(b), *supra*.] **In considering the need for the protection of the public, the court noted that** [**Appellant**] **was a grave threat to the public given his history of misbehavior**. *Id.* at 138. In considering the gravity of the offense in relation to its impact on the victim and the community, the court noted the loss of Johnson's life at a young age and the profound impact the homicide had on Johnson's family. *Id.* at 138-39. The court also considered [Appellant's] rehabilitative needs. *Id.* at 139.

Additionally, **the court noted on the record its rationale for departing above the guidelines** and imposing consecutive sentences, both of which were eminently reasonable given [Appellant's] history of misbehavior. **The court noted that [Appellant's] contempt for the rule of law and judicial process was "unprecedented"** and that the court had never seen anyone act with such disdain for the rule of law. *Id.* at 139-43. [**Appellant**] **threatened five out of the six lawyers who represented him over the course of the case.** *Id.* at 139-40. He punched his lawyer in the face during his prior trial. *Id.* at 140. At that same trial, he threatened jurors from the adjacency lockup[,] causing jurors to be so upset and feel so threatened that they were unable to continue, which resulted in a mistrial. *Id.* [**Appellant**] **then threatened to kill the Honorable Barbara McDermott**, which caused Judge McDermott to recuse herself from the case. *Id.* Finally, the court noted that, given [Appellant's] history, it fashioned accommodations so that [Appellant] could still participate in trial and [Appellant] immediately, within three minutes of the court's opening remarks, began yelling and had to be removed from the adjacency lockup in order to prevent another mistrial. *Id.* at 140-41. Accordingly, consecutive sentences departing above the guidelines were reasonable.

Trial Court Opinion, 4/15/24, at 22-23 (emphasis added; footnote omitted; some capitalization modified).

Our review discloses the trial court's reasoning is supported by the record, and we agree with its conclusion. *See id.* The court clearly did not abuse its ample discretion in imposing reasonable sentences on the remaining convictions under the circumstances. The record belies Appellant's claim the court imposed sentence based solely on retribution. Accordingly, Appellant's discretionary sentencing claim lacks merit.

Based on the foregoing, as we discern no error of law or abuse of discretion by the trial court, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024

J-S41004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TARRELL RISTER | : | |
| | : | |
| Appellant | : | No. 220 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002723-2018

BEFORE:  MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                **FILED NOVEMBER 26, 2024**

Tarrell Rister (Appellant) appeals from the judgment of sentence imposed following his convictions (a) by a jury of one count each of first-degree murder, firearms not to be carried without a license, carrying a firearm on public property in Philadelphia, and possession of an instrument of crime (PIC); and (b) by the trial court of persons not to possess firearms.[1]  We affirm.

The trial court detailed the evidence presented at trial as follows:

> On December 16, 2017, at approximately 6:20 p.m., the decedent, Muhammaud Johnson [(Johnson or the victim)], met [Appellant] outside of Joe's Market at the corner of Benner Street and Torresdale Avenue in Philadelphia.  N.T., 11/14/23, at 61, 176-79, 184; N.T., 11/15/[23], at 84-85, 172-74.  [Appellant] had previously arranged to purchase marijuana from another man,

_____

[1] ***See*** 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, 907(a), 6105(a)(1).

Shakur Bennett [(Bennett)], but Bennett sent Johnson to complete the transaction. N.T., 11/15/23, at 173-74. Johnson gave [Appellant] two bags of marijuana and the two men parted ways. N.T., 11/14/23, at 179-80; [N.T.,] 11/15/23, at 173-74, 181-82. At approximately 6:45 p.m., [Appellant] texted Bennett that he wanted "two more." N.T., 11/15/23, at 85, 174-75. At approximately 7:15 p.m., [Appellant] returned to Joe's Market, where he waited for Johnson to arrive. N.T., 11/14/23, at 180-81; N.T., 11/15/23, at 174. A short time later, Johnson also returned to Joe's Market, where he met with [Appellant] outside of the store. N.T., 11/14/23, at 182; N.T., 11/15/23, at 174-75, 182. The two men proceeded westbound down Benner Street together. N.T., 11/14/23, at 182; N.T., 11/15/23, at 182-83. [Appellant] then pulled out a firearm and shot Johnson twice. N.T., 11/14/23, at 183; N.T., 11/15/23, at 17, 175-76. Johnson was struck in the right side of his chest as well as in the middle of his back. N.T., 11/15/23, at 17. [Appellant] then fled on foot eastbound down Benner Street. N.T., 11/14/23, at 182; N.T., 11/15/23, at 175-76, 183.

Police arrived on the 4600 block of Benner Street at approximately 7:30 p.m.[,] where they observed Johnson lying on the ground with bullet holes in his jacket. N.T., 11/14/23, at 61-63, 65-67, 72. Police transported Johnson to Temple University Hospital, where he was later pronounced dead. *Id.* at 66-68, 78. The medical examiner determined that Johnson's cause of death was gunshot wounds to the torso and his manner of death was homicide. N.T., 11/15/23, at 19. [Appellant] was not licensed to carry a firearm on the date of the murder. N.T., 11/16/23, at 16.

Trial Court Opinion, 4/15/24, at 2-3 (citations modified).

Following Appellant's arrest, the Commonwealth charged him with the above-mentioned offenses. As we explain further below, prior to trial, Appellant had numerous court-appointed counsel, each of whom was granted leave to withdraw due to Appellant's inappropriate conduct. In short, Appellant (a) threatened various counsel; and (b) punched his fourth counsel, George Yacoubian, Esquire (Attorney Yacoubian), during Appellant's first jury

trial in May 2022, which resulted in a mistrial. **See** Trial Court Opinion, 4/15/24, at 7-8 (describing Appellant's prior counsel and Appellant's courtroom misbehavior).

Before Appellant's first trial, on May 3, 2022, the Commonwealth filed a "Motion *in Limine* to Admit 911 Calls." The Commonwealth claimed certain 911 calls placed following the shooting (the 911 calls)[2] were relevant and admissible under exceptions to the rule against hearsay (discussed below). **See generally** Motion *in Limine*, 5/3/22. The Commonwealth proffered the 911 calls were

> relevant and probative of the identification of [Appellant], as well as [the victim's] cause of death. The calls are not excludable under the [rule against] hearsay [], regardless of whether the declarant is available as a witness, because [the 911 calls] were made contemporaneously to the events they describe, before the opportunity for reflection, and there is independent evidence to support their veracity.

*Id.* at 1. Appellant did not respond to the motion *in limine*. The trial court granted the motion *in limine* prior to trial.[3]

_____

[2] There were several 911 calls placed by bystanders close to the scene of the murder, three of which are relevant to this appeal. In two of the 911 calls, the declarants reported hearing gunshots, provided a description of the shooter, and told police the direction in which the shooter had fled. **See** Motion *in Limine*, 5/3/22, at 2-3. The declarant in the third 911 call described the victim's injuries and poor condition. *Id.* at 5.

[3] The record does not include an order or docket entry pertaining to the motion *in limine*, though it is clear the motion was granted, as the Commonwealth played the 911 calls at trial. **See** N.T., 11/4/23, at 58-59.

On October 20, 2023, Appellant filed a "Motion *in Limine* to Introduce Police Misconduct" through his sixth attorney, Joseph Schultz, Esquire (Attorney Schultz or defense counsel).[4]  Specifically, Appellant sought to introduce evidence of police misconduct, in unrelated cases, committed by three Philadelphia Police detectives involved in his case: Detective Freddie Mole (Detective Mole), Detective Joseph Murray (Detective Murray), and Detective Donald Suchinsky (Detective Suchinsky) (collectively, "the three Detectives").  Motion *in Limine*, 10/20/23, ¶¶ 7-10 (detailing the misconduct);[5] ***see also id.*** ¶¶ 3, 4, 6 (stating in the instant case, "Detectives [] Mole and [] Suchinsky were the first homicide detectives to arrive at the crime scene"; "Detective [] Murray was the affiant of three search warrants"; and "Detective Mole recovered video surveillance footage").  The trial court denied Appellant's motion *in limine* on November 8, 2023.

Appellant's second jury trial occurred on November 13-16, 2023.  Appellant was represented by Attorney Schultz.  Appellant, the sole defense

---

[4] Appellant also filed several *pro se*, handwritten motions *in limine*, while he was represented by counsel.  ***See Commonwealth v. Willis***, 29 A.3d 393, 400 (Pa. Super. 2011) (observing the "long-standing policy that precludes hybrid representation." (citation omitted)).

[5] The trial court competently summarized the three Detectives' misconduct in its Pa.R.A.P. 1925(a) opinion.  ***See*** Trial Court Opinion, 4/15/24, at 5-6.

witness, testified[6] that he shot the victim, but maintained he acted in self-defense or imperfect self-defense.[7]  **See** N.T., 11/15/23, at 174-77.

On November 16, 2023, the jury found Appellant guilty of first-degree murder, as well as the remaining above-mentioned crimes, and the trial court found him guilty of persons not to possess firearms.  The trial court immediately imposed the mandatory sentence of life in prison for the murder charge.[8]  N.T., 11/16/23, at 143.  Prior to sentencing Appellant on the remaining charges (collectively, "the remaining convictions"), the court referenced Appellant's repeated courtroom misconduct, noting "this is an extraordinary case."[9]  **Id.** at 142.  Specifically, the trial court stated Appellant's

_____

[6] Appellant testified via pre-recorded video deposition.  Before trial, the trial court ruled Appellant had forfeited his right to give live trial testimony due to his repeated, disruptive courtroom misconduct.  **See** Order, 6/9/23; Trial Court Opinion, 4/15/24, at 7-11; **see also** N.T., 5/9/23, at 43-45 (trial court warning Appellant, prior to the mistrial, that if he continued his disruptive conduct, he would waive his right to give live testimony).

[7] "Unlike the affirmative defense of self-defense, which is a justification for the crime and, if accepted, results in acquittal, a finding of imperfect self-defense results in conviction of the offense of voluntary manslaughter," rather than homicide.  **Commonwealth v. Busanet**, 54 A.3d 35, 52 n.11 (Pa. 2012).

[8] The record does not reveal whether the trial court, in sentencing Appellant, had the benefit of a presentence investigation report.

[9] The trial court also considered the victim impact statements provided by family members of the victim.  **See** N.T., 11/16/23, at 123-26.  Further, the
*(Footnote Continued Next Page)*

behavior is something that is unprecedented, that I've never seen in the history of all my years in my work here…. I have never seen anything like this or anything close to this, and that's why I am going to give [Appellant] consecutive [sentences on the remaining convictions], and that's the reason for [the court's] departing above the [sentencing] guidelines….

*Id.* at 142-43.

With regard to the remaining convictions, the trial court imposed consecutive, statutory maximum[10] terms of 3½ to 7 years' incarceration for firearms not to be carried without a license; 2½ to 5 years' incarceration for carrying a firearm on public property in Philadelphia; 2½ to 5 years' incarceration for PIC; and 10 to 20 years' incarceration for persons not to possess firearms. Thus, Appellant's aggregate sentence was life in prison plus 18½ to 37 years' incarceration.

Appellant timely filed a post-sentence motion on November 20, 2023. Appellant claimed, in relevant part, "[t]he verdict was against the weight of the evidence as there was such conflicting statements and conflicting physical evidence presented by the Commonwealth that the verdict shocks the consci[ence.]" Post-Sentence Motion, 11/20/23, ¶ 3; *see also id.* ¶ 4

_____

court considered Appellant's lengthy allocution, wherein he complained about Attorney Schultz's representation and asserted his innocence. *Id.* at 130-36.

[10] The sentences for each of the remaining convictions constituted the respective statutory maximums. *See* 18 Pa.C.S.A. §§ 1103(1) and (3), 1104(1); *see also* Trial Court Opinion, 4/15/24, at 22 n.4 (explaining the applicable sentencing guidelines).

(asserting the verdicts were not supported by sufficient evidence). On the same date, Appellant filed a motion for reconsideration of sentence. He claimed the trial court abused its discretion in imposing an unreasonably harsh and excessive aggregate sentence, which failed to account for all relevant sentencing considerations. Motion for Reconsideration, 11/20/23, ¶¶ 12-14.

The trial court denied Appellant's post-sentence motion, and motion for reconsideration, on December 28, 2023. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents six issues for our review:

1. Was there insufficient evidence to sustain Appellant's conviction for first-degree murder beyond a reasonable doubt because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense?

2. Was Appellant's conviction for first-degree murder against the weight of the evidence because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense?

3. Did the trial court err by denying Appellant his Constitutional rights to be present and testify at his trial before the jury and cause irreparable harm to Appellant by not allowing Appellant to be present for his trial and testify in front of the jury?

4. Did the trial court err and cause irreparable harm to Appellant by allowing hearsay 911 calls to be admitted over Appellant's objection?

5. Did the trial court abuse its discretion in denying Appellant's request to introduce evidence [related to the three] detectives involved in Appellant's case[,] when several of the detectives, particularly Detective [] Mole, habitually lied and fabricated

evidence and when these detectives played a key role in collecting evidence in Appellant's case, including video surveillance and cell phone evidence?

6. Did the sentencing court abuse[] its discretion in sentencing Appellant to consecutive, non-guideline sentences beyond the mandatory life sentence imposed for first-degree murder?

Appellant's Brief at 4-5 (issues reordered; some capitalization modified).

Appellant first argues his conviction for first-degree murder cannot stand because it is based on insufficient evidence. *See id.* at 21-24. Appellant emphasizes his trial testimony that "he felt threatened by" the victim and claims, "[t]here is no evidence to rebut this." *Id.* at 21; *see also id.* (asserting the surveillance "video of the incident does not in any way rebut Appellant's testimony that he acted in self-defense or unreasonable self-defense."). According to Appellant,

[t]here is insufficient evidence to sustain Appellant's conviction for first-degree [m]urder beyond a reasonable doubt because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense.

*Id.* at 23 (citing N.T., 11/15/23, at 171-212 (Appellant's trial testimony)).

The Commonwealth counters the trial court properly rejected Appellant's sufficiency challenge, as the Commonwealth 1) proved beyond a reasonable doubt all elements of first-degree murder; and 2) disproved Appellant's claim of self-defense. *See* Commonwealth Brief at 31-32. The Commonwealth claims "the jury was permitted to … infer[]" Appellant had the "specific intent to kill based on his use of a deadly weapon" in shooting the

victim. ***Id.*** at 32. The Commonwealth further maintains it "proved that [Appellant] did not act out of self-defense or imperfect self-defense…." ***Id.***

A sufficiency claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017). "Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Peters***, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation and brackets omitted); ***see also Commonwealth v. Banniger***, 303 A.3d 1085, 1091 (Pa. Super. 2023) ("Our inquiry is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." (citations and quotation marks omitted)).

> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Peters***, 320 A.3d at 1236 (citation omitted). Further, the Commonwealth "may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."

*Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (citation omitted).

"To convict a defendant of first[-]degree murder, the Commonwealth must prove: a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011) (citations omitted). Our Supreme Court has instructed,

> [a]n intentional killing is one committed by means of poison, lying in wait, or by any other kind of willful, deliberate, and premeditated action. The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill.

*Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007) (internal citations omitted).

Under the Crimes Code, self-defense is a defense of justification, which is a complete defense to criminal liability. *See* 18 Pa.C.S.A. §§ 502, 505. "While there is no burden on a defendant to prove [a] claim [of self-defense], before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

> Self-defense is a complete defense to a homicide charge if (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; (2) the defendant did not provoke the threat that resulted in the slaying; and (3) the defendant did not violate a duty to retreat. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three

- 10 -

elements is absent. If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.

*Commonwealth v. Jones* 271 A.3d 452, 458 (Pa. Super. 2021) (internal citations omitted). Moreover, the fact-finder "is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense." *Id.* (citing *Houser*, 18 A.3d at 1135).

Here, the trial court stated in its Pa.R.A.P. 1925(a) opinion that the evidence was sufficient to sustain Appellant's first-degree murder conviction and disprove his claim of self-defense:

> [Appellant's] argument that the Commonwealth failed to disprove his claim of self-defense is frivolous. While [Appellant] testified that he acted in self-defense, his testimony was contradicted by [defense] counsel's entire trial strategy as well as [Appellant's] own *pro se* pleadings.
>
> Defense counsel's opening statement unequivocally presented a theory of misidentification. *See* N.T., 11/14/23, at 52-56. In fact, in his opening statement, [defense] counsel stated[,] "this [case] is all about the identification … [m]ake no other qualms about it … the video says what happens. You're going to see what happens. The question now before you is, who did it?" *Id.* at 55. Furthermore, the Commonwealth cross-examined [Appellant] with numerous *pro se* pretrial pleadings that were inconsistent with a self-defense theory. *See* N.T., 11/15/23, at 191-98. [Appellant] admitted that none of those pretrial pleadings were consistent with his testimony regarding self-defense. *Id.* at 193-95. Additionally, [Appellant] testified that it was defense counsel's strategy not to raise self-defense and that, while he disagreed with defense counsel, he believed that he needed to comply with defense counsel's theory of the case in

- 11 -

order to win pretrial motions and effectively litigate the case. *Id.* at 186, 193-94.[FN1]

---

[FN1] During sentencing, [Appellant] conceded that his testimony regarding self-defense was false, and maintained that he perjured himself, pursuant to the advice of [defense] counsel, in order to obtain a manslaughter instruction. *See* N.T., 11/16/23, at 130.

---

Moreover, [Appellant's] testimony, which was the only evidence presented suggesting that [Appellant] acted in self-defense, was refuted by the other evidence presented at trial. Most importantly, **the surveillance video did not show that Johnson had a weapon or that he made any threatening motions toward** [**Appellant**] during any of their interactions. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). There was no evidence presented at trial showing that Johnson possessed a weapon on the night of the shooting. Furthermore, while [Appellant] testified that Johnson told him to walk up Benner Street to a dark location, which was the reason that [Appellant] stated he feared Johnson would rob and kill him, the video showed [Appellant] motion for Johnson to walk up Benner Street and, as the two men began to walk up Benner Street, [Appellant] led the way. N.T., 11/15/23, at 174-77; Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). Additionally, while [Appellant] testified that Johnson was reaching into his pockets, [**Appellant**] **never stated that he saw Johnson with a weapon.** *See* N.T., 11/15/16, at 171-212. In sum, the video shows [Appellant], unprovoked, pull out a firearm and shoot the unarmed victim, [] then flee down Benner Street. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video).

[**Appellant's**] **testimony that he acted in self-defense was also undermined by his paradoxical denial that he was the shooter in the surveillance video**. While [Appellant] admitted to shooting Johnson, he denied that he was the shooter depicted in the surveillance video. N.T., 11/15/23, at 174-77, 182-83, 198-211. However, the Commonwealth convincingly established that [Appellant] was the man in the video. The video clearly captured the face of the shooter, which looked exactly like [Appellant]. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); Commonwealth Exhibit C-2

- 12 -

(Photograph of [Appellant]).[FN2]   Furthermore, the shooter approached Joe's Market from the east side of Torresdale Avenue, which was consistent with where [Appellant] lived at the time of the murder.  Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); N.T. 11/15/23 at 172, 201-02.  Additionally, the shooter appeared taller than Johnson, who was six-foot-four-inches tall.  Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); N.T., 11/15/23, at 19.  [Appellant] is six-foot five-inches tall.  N.T., 11/15/23, at 118; Commonwealth Exhibit C-34 (Pennsylvania Certified Driver History).

---

[FN2] Since [Appellant] was not present in court with the jury, the Commonwealth published Exhibit C-2 so the jury could see [Appellant's] face.

---

Furthermore, **cell phone records also corroborated that [Appellant] was the shooter** depicted in the video.  The Commonwealth presented a cell phone extraction of the phone found next to the [victim].  N.T., 11/15/23, at 76-77.  The extraction included phone calls and text messages between the phone found next to the [victim] and the number registered to [Appellant].  *Id.* at 77.  These calls and text messages occurred on December 16, 2017, the date of the murder, between approximately 5:50 p.m. and 7:20 p.m.  *Id.* at 81-86; Commonwealth Exhibit C-20 (Phone Extraction Report).  These text messages and calls lined up with actions the shooter took on the video.  *See* Commonwealth Exhibit C-20 (Phone Extraction Report); Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video).  For example, at approximately 7:18 p.m., the shooter is seen making a phone call on the surveillance video.  Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video).  The call records show that a call was placed at approximately 7:18 p.m. from the number associated with [Appellant] to the phone found next to the [victim].  Commonwealth Exhibit C-20 (Phone Extraction Report).

All of this was compelling proof that completely refuted [Appellant's] claim of self-defense.  Furthermore, based upon the evidence adduced at trial by both the Commonwealth and defense, [**Appellant's**] **testimony that he acted in self-defense was utterly incredible**.  The jury was free to reject his

- 13 -

testimony.  *See Ramtahal*, 33 A.3d at 607.

Trial Court Opinion, 4/15/24, at 16-19 (emphasis added; footnotes in original; some citations and capitalization modified).  The trial court additionally found that Appellant's use of a deadly weapon on a vital part of the victim's body "was sufficient evidence to show that [Appellant] acted with specific intent to kill."  *Id.* at 19; *see also Rega*, 933 A.2d at 1009.

Our review confirms the trial court's reasoning is supported by the record and we agree with its conclusion.  *See id.* at 16-19.  Appellant essentially asks us to 1) ignore the evidence of his guilt (including compelling surveillance video); 2) reweigh the evidence, viewed in a light most favorable to him; and 3) substitute our judgment for that of the jury and credit Appellant's justification defense.  This we cannot do.  *See Jones* 271 A.3d at 458 (stating **the fact-finder "is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense."** (emphasis added)).  Because the Commonwealth clearly produced sufficient, overwhelming evidence establishing all elements of first-degree murder beyond a reasonable doubt, his sufficiency challenge does not merit relief.

In his second issue, Appellant argues the jury's verdict of guilty for first-degree murder is against the weight of the evidence.[11] *See* Appellant's Brief at 24-27. Appellant repeats essentially the same argument he raised in connection with his sufficiency challenge. Namely, he 1) emphasizes his trial testimony that "he felt threatened by" the victim and "feared for his safety prior to shooting" him, *id.* at 24, 27; and 2) claims "video of the incident does not in any way rebut Appellant's testimony that he acted in self-defense or unreasonable self-defense." *Id.* at 27. Accordingly, Appellant contends the trial court erred in denying his post-sentence motion for a new trial. *Id.*

The Commonwealth counters the trial court properly exercised its discretion in rejecting Appellant's weight claim. *See* Commonwealth Brief at 32-34. "Because the evidence demonstrating that [Appellant] did not act out of self-defense or imperfect self-defense was overwhelming, [Appellant's weight] claim is meritless." *Id.* at 32; *see also id.* at 33 (correctly pointing out "the only evidence [Appellant] proffered that he acted out of self-defense or imperfect self-defense was his own testimony."). According to the Commonwealth, the "verdict did not shock the consci[ence] because the jury accepted the objective facts rather than [Appellant's] self-contradicting testimony." *Id.* at 34.

_____

[11] Appellant preserved this issue, as required by Pa.R.Crim.P. 607, by raising it with the trial court in a post-sentence motion. *See* Post-Sentence Motion, 11/20/23, ¶ 3.

We review a trial court's ruling on a challenge to the verdict as against the weight of the evidence for an abuse of discretion. ***Banniger***, 303 A.3d at 1095; ***see also Commonwealth v. Harrington***, 262 A.3d 639, 646 (Pa. Super. 2021) ("An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." (citation omitted)).

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a palpable abuse of discretion will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (internal citations, emphasis, and quotation marks omitted); ***see also Commonwealth v. Sanchez***, 262 A.3d 1283, 1288 (Pa. Super. 2021) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate

court to substitute its judgment based on a cold record for that of the trial court."). "It is well settled that the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses...." *Commonwealth v. James*, 297 A.3d 755, 768 (Pa. Super. 2023) (citation omitted).

Here, the trial court opined it properly exercised its discretion in rejecting Appellant's weight claim, and found the guilty verdict for first-degree murder was amply supported by the evidence and did not shock the court's conscience. *See* Trial Court Opinion, 4/15/24, at 20. We decline Appellant's invitation to assume the role of the fact-finder, reweigh the evidence on appeal, and usurp the jury's credibility determinations concerning, *inter alia*, Appellant's self-serving and self-contradictory trial testimony. Upon review, we conclude the trial court properly exercised its discretion in denying Appellant's weight claim. *See Commonwealth v. Scott*, 146 A.3d 775, 778 (Pa. Super. 2016) (stating an appellate court will not disturb the fact-finder's credibility findings that are supported by evidence of record); *Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009) (holding trial court properly exercised discretion in denying a weight challenge where the appellant asked this Court to reweigh the evidence). Consequently, Appellant's second issue merits no relief.

In his third issue, Appellant claims the trial court unlawfully deprived him of his right to be physically present for trial. *See* Appellant's Brief at 12-

14. Although Appellant concedes he "had engaged in courtroom misconduct previously," *id.* at 12, he maintains "there was minimal misconduct in the second trial and denial of the right to be present and testify before the jury prejudiced Appellant." *Id.* According to Appellant, "[t]he trial court abused its discretion and Appellant was harmed because the jury could only assume that Appellant was guilty because he could not even be in the courtroom." *Id.* at 14; *see also id.* ("Alternative measures were not adequately considered.").

The Commonwealth conversely argues the trial court did not violate Appellant's right to be physically present during trial, as he had forfeited this non-absolute right due to his repeated courtroom misconduct. *See* Commonwealth Brief at 16-21.

> [Appellant's] egregiously disruptive, violent, and threatening behavior, even after [a] warning from the [trial] court, fully supported the trial court's conclusion that [Appellant] had forfeited his right to be present. Given [Appellant's] behavior throughout his case, it was exceedingly likely that that he would again engage in threatening or disruptive behavior before the jury if permitted to testify in-person. Thus, the court fashioned a reasonable alternative that preserved [Appellant's] rights to testify. Accordingly, neither his right to be present nor his right to testify were violated.

*Id.* at 16. The Commonwealth points out Appellant "cites no authority to suggest that a court must overlook the prior behavior of a defendant after that very behavior led to a mistrial." *Id.* at 18.

It is well-settled that "[a] criminal defendant has both a rule-based right to be present for trial, Pa.R.Crim.P. 602, as well as a constitutional right." *Commonwealth v. Tejada*, 188 A.3d 1288, 1293 (Pa. Super. 2018); *see*

***also Commonwealth v. Kelly***, 78 A.3d 1136, 1141 (Pa. Super. 2013)

(explaining the constitutional right). However, this right is not absolute.

***Tejada***, 188 A.3d at 1293.

> [A] defendant can lose his right to be present at trial if, after he
> has been warned by the judge that he will be removed if he
> continues his disruptive behavior, he nevertheless insists on
> conducting himself in a manner so disorderly, disruptive, and
> disrespectful of the court that his trial cannot be carried on with
> him in the courtroom.

***Id.*** (citation omitted); ***see also Commonwealth v. Baldwin***, 58 A.3d 754,

764 (Pa. 2012) (stating while a defendant has the right to testify, this right

"is not without parameters, and cannot be used as a vehicle for a defendant

to obviate the rules of trial procedure and evidence."). "[A] judge has the

responsibility and authority to maintain in the courtroom the appropriate

atmosphere for the fair and orderly disposition of the issues presented."

***Commonwealth v. Chester***, 587 A.2d 1367, 1379 (Pa. 1991).

Here, the trial court opined it did not violate Appellant's rights or err in

ruling he had forfeited his right to give live trial testimony:

> [Appellant] forfeited his right to be present through his disorderly,
> disruptive and disrespectful behavior. [Appellant] was originally
> represented by privately retained counsel, Allan Sagot, Esquire,
> who moved to withdraw after claiming [Appellant] failed to pay
> him. [Appellant's] next four appointed attorneys all withdrew due
> to [Appellant's] behavior. Attorney Deborah Nixon complained of
> hostile telephone calls from [Appellant] in which [Appellant]
> screamed, used profanity, threatened "to sabotage" her, and
> stated there would be a "gang war" with her. N.T., 8/26/19, at
> 15-20. Attorney Benjamin Cooper, the next to serve, withdrew
> after [Appellant] accused him of collaborating with the prosecution
> and filed a complaint about him with the FBI. … Attorney Eileen

Hurley, who took over next, withdrew after [Appellant] made threats against her.

On May 9, 2022, [Appellant's] initial jury trial began before the Honorable Barbara McDermott. [Attorney] Yacoubian … represented [Appellant]. Based upon [Appellant's] long history of issues with prior counsel, the court asked [Appellant] if he was ready to proceed with [Attorney] Yacoubian representing him. N.T., 5/9/22, at 12-14. [Appellant] confirmed that he was ready to proceed. *Id.* After the jury was sworn in, as [Appellant had] entered his not guilty plea, [Appellant] stated that [Attorney] Yacoubian was "railroading" him and had not subpoenaed witnesses. *Id.* at 40-42. The court cleared the jurors from the courtroom. *Id.* At that time, [Appellant] warned [Attorney] Yacoubian not to "play with [him]." *Id.* at 41-42. [Attorney] Yacoubian asked [Appellant] if [Appellant] was threating him, to which [Appellant] responded, "I said don't play with me." *Id.* The court then warned [Appellant] that if he had another outburst he would be removed from the courtroom. *Id.* at 42-43. [Appellant] confirmed he understood the warning. *Id.* at 44-46.

Two days later, on May 11, 2022, as the Commonwealth called its first witness of the day's proceedings, [**Appellant**] **punched** [**Attorney**] **Yacoubian in the face**. N.T., 5/11/22, at 14-16. The court immediately removed the jurors from the courtroom and sent them to the courtroom next door. *Id.* at 14-19, 24. [Appellant] was removed from the courtroom by the sheriff and placed in the lockup located in the [cell block] next to the courtroom [(adjacency lockup)]. *Id.* at 17[; *see also id.* at 23-24 (trial court stating the configuration "of the courtroom … is such that the cell block is immediately next to the courtroom."). Appellant] then began screaming from the adjacency lockup. *Id.* [at 17. Appellant] accused Judge McDermott of colluding with the District Attorney's Office. *Id.* at 17-21. Moreover, [Appellant] began threatening [Attorney] Yacoubian's family stating, "I know where your kids are at, George" and "I don't know why you would do this, George. You know I know where your fucking family lives at, George." *Id.* at 17-21. [Appellant] then began yelling juror numbers and stating "y'all know what y'all are doing." *Id.* at 22-23. At that point, Judge McDermott had [Appellant] removed from the adjacency lockup to the court's main holding center. *Id.* at 22-26.

Judge McDermott brought the jurors back into the courtroom to explain the delay and then individually colloqu[i]ed them about whether they could still be fair. *Id.* at 30-56. During the individual colloquies, it became apparent that the jurors had seen [Appellant] punch [Attorney] Yacoubian, heard [Appellant's] threats and shouting from the [adjacency lockup], and felt threatened by [Appellant's] behavior. *Id.* Out of fourteen jurors, only two stated they could potentially still be fair. *Id.* [Attorney] Yacoubian motioned for a mistrial and the court granted [Attorney] Yacoubian's motion. *Id.* at 19, 56-60.

At a status listing on February 16, 2023, Judge McDermott again had to remove [Appellant] from the courtroom after [Appellant] continued to interrupt the court and accused Judge McDermott of lying. N.T., 2/16/23, at 27. As sheriffs removed [Appellant], he began mouthing words and yelling obscenities at the court. *Id.* at 28. A court officer reported to the court that [**Appellant**] **was mouthing the phrase "I will kill you" to Judge McDermott** as [Appellant] was removed from the courtroom. *Id.* at 33. As sheriffs removed [Appellant] from the adjacency lockup to the main holding center located in the basement of the courthouse, [Appellant] threatened Judge McDermott again by stating "[b]itch, you've got something to worry about, not the lawyer." *Id.* at 34-35. Based upon this behavior, Judge McDermott recused herself from the case and the case was reassigned to the [] judge [who authored the Pa.R.A.P. 1925(a) opinion, the Honorable Glenn B. Bronson.]

On June 9, 2023, th[e trial] court issued an order, which outlined [Appellant's] long history of misbehavior and ordered that [Appellant] had forfeited his right to be present for trial as well as his right to proceed *pro se*. However, the court agreed to allow [Appellant] to be present in the courthouse during his trial and watch it via audio-visual transmission from the adjacency lockup. The court moved [Appellant's] trial to a larger courtroom[,] where the adjacency lockup is located farther from the jury box so that the jurors would not be able to hear [Appellant] if he yelled disruptive threats as he had in the initial trial. Additionally, the court arranged to have a camera capture a live feed of the proceedings, which would be broadcasted directly to [Appellant] in the adjacency lockup.

[Appellant's] trial began with jury selection on November 13, 2023, under the aforementioned restrictions. The next day,

just minutes after the jury was sworn in as the court gave preliminary instructions, [Appellant] began yelling from the adjacency lockup. N.T., 11/14/23, at 14. Unfortunately, even in the larger courtroom, [Appellant] was able to yell loud enough to be heard by the jurors. The court immediately removed the jurors from the courtroom. *Id.* As the court heard argument from counsel regarding whether [Appellant] could remain in the adjacency [lockup] going forward, [Appellant] continuously yelled from the adjacency [lockup] and disrupted the proceedings. *Id.* at 14-21. At that point, the court ruled that [Appellant] had forfeited his right to be present in the adjacency [lockup] with a live feed of the proceedings. *Id.* at 15-20. The court had [Appellant] removed from the adjacency lockup to the court's main holding center. *Id.* at 21-22. Once [Appellant] was removed, the jurors were brought back to the courtroom. *Id.* at 24. After consulting with both defense counsel and the assistant district attorney, the court informed the jurors that "[w]e did have a slight disturbance, which has been rectified, so we're going to continue on now with our trial." *Id.* at 22-24.

Therefore, [**Appellant's**] **long history of outrageous behavior necessitated a trial *in absentia***. In [Appellant's] first trial, he physically assaulted [Attorney Yacoubian] in full view of the jury and then threatened jurors …, which caused a mistrial. At a later status hearing, [Appellant] threatened to kill the [Judge] McDermott, which caused Judge McDermott to recuse herself from the case. After the case was reassigned …, **the [trial] court attempted to make every accommodation to balance [Appellant's] right to be present with the need to try the case fairly. Even under such accommodations, [Appellant] still could not maintain proper decorum and had to be removed in order to prevent another mistrial.** Since [Appellant] forfeited his right to be present through his behavior in the courtroom, the court did not err in barring [Appellant] from the courtroom during his trial. *See Tejada*, 188 A.3d at 1293-94.

Trial Court Opinion, 4/15/24, at 7-11 (emphasis added; some citations and capitalization modified).

The trial court continued:

- 22 -

Additionally, having forfeited his right to be present in the courtroom, [Appellant] necessarily forfeited his right to testify in front of the jury. Nonetheless, the [trial c]ourt permitted [Appellant] to testify by recorded trial deposition, which obviated the concern that [Appellant] would misbehave in order to cause another mistrial. [Appellant's] testimony was taken in a manner similar to a Pa.R.Crim.P. 500 preservation hearing. [12] [Appellant's] testimony was recorded on video in the courtroom. All parties were situated exactly as they would have been at trial, with the sole exception that the jury was not present. Both the attorney for the Commonwealth as well as defense counsel conducted the questioning…. Furthermore, the [c]ourt did not require the [Appellant] to decide whether to testify until after the Commonwealth had rested.

*Id.* at 11-12 (footnote added).

Our review discloses the trial court's cogent reasoning is supported by the law and the record, and we agree with its conclusion. *See id.* at 7-12; *see also Tejada*, 188 A.3d at 1293.

Moreover, Appellant cannot show prejudice, as the trial court issued several cautionary instructions to the jury regarding Appellant testifying by video in lieu of live testimony. Specifically, prior to jury selection, the court instructed as follows:

The defendant in this case, ladies and gentlemen, is [Appellant]. And as you folks can see he is not here in this courtroom. He is, however, able to see and hear everything that is going on during this trial through an audio-visual system that we have set up here in this courtroom.

---

[12] Rule 500 provides, in relevant part, a trial court "may order the taking and preserving of the testimony of any witness who may be unavailable for trial …, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved." Pa.R.Crim.P. 500(A)(1).

In addition, he will be able to confer with his attorney, [Attorney] Schultz, here throughout the course of this trial. Now, the reason that we are proceeding in this fashion is not something you should concern yourselves with. I need you folks to understand -- and this is important -- that it is completely lawful for us to proceed in this way under the circumstances of this case.

In addition, folks, if you are selected to be on this jury **you may not in any manner consider the fact that** [**Appellant**] **is attending the trial through audio-visual communication when you're making your decision in this case. In other words, you may not hold it against** [**Appellant**] or against the Commonwealth or against anybody else connected with this case.

N.T., 11/13/23, at 19-20 (emphasis added).

Moreover, the trial court questioned the prospective jurors prior to jury selection:

**Is there anybody here who believes that because** [**Appellant**] **will be participating in this trial through audio-visual communication and will not be here in the courtroom that you would be unable to be a fair and an impartial juror in this case**, in other words, [Appellant's] absence from the courtroom would substantially interfere with or prevent you from being a fair and an impartial juror?

*Id.* at 25 (emphasis added). No juror responded in the affirmative. *Id.*

Before Appellant's recorded testimony was played for the reconvened jury, the trial court again instructed the jury:

[Appellant] has decided to testify in this case, and you are going to hear from him. However, for logistical purposes that need not concern you, you will be hearing his testimony by way of what we call a trial deposition, which is completely lawful in this case. What this means is that this testimony was recorded today after the Commonwealth presented all of its evidence and rested, okay? That's why we had this long break.

[Attorney] Schultz was there to ask questions on direct examination; … the assistant district attorney[] cross-examined

- 24 -

[Appellant]; and I was there to rule on any objections. And **I instruct you to consider this testimony just as if you were sitting here live and listening to it.** You may not hold it against [Appellant] or the Commonwealth or anyone else connected with this case that the testimony is being presented in this fashion, okay?

N.T., 11/15/23, at 217-18 (emphasis added); *see also* N.T., 11/16/23, at 57-58 (trial court's final charge to the jury, wherein it repeated essentially the same instructions detailed *supra*).[13]

It is well established that a jury is presumed to follow a trial court's instructions. *Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004) ("It is presumed the jury follows [a trial] court's instructions."); *Commonwealth v. Watkins*, 843 A.2d 1203, 1216 (Pa. 2003) (stating a jury "is assumed to have followed" a cautionary instruction, and such an instruction "is presumed to be sufficient to cure any prejudice"). Based on the foregoing, there is no merit to Appellant's claim he was unlawfully tried *in absentia*.

In his fourth issue, Appellant contends the trial court erred in granting the Commonwealth's motion *in limine* and admitting inadmissible hearsay evidence in the form of the 911 calls. *See* Appellant's Brief at 14-20. Appellant claims that a "verdict based in any material respect on inadmissible hearsay is unreliable because inadmissible hearsay by definition is unreliable."

_____

[13] We note Attorney Schultz did not object to the trial court's cautionary instructions. *See Commonwealth v. Page*, 965 A.2d 1212, 1222 (Pa. Super. 2009) ("Because [a]ppellant did not object to the [trial court's cautionary] instruction, any claim in relation to its adequacy is waived.") (citations omitted).

*Id.* at 19 (emphasis omitted). Appellant contends the trial court's erroneous ruling "caused irreparable harm to Appellant." *Id.* at 20.

Appellant's claim implicates the admissibility of evidence and the trial court's ruling on the Commonwealth's motion *in limine*; we review such rulings for an abuse of discretion. *Commonwealth v. Mangel*, 181 A.3d 1154, 1158 (Pa. Super. 2018); *see also Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (stating the "standard of review for a trial court's evidentiary rulings is narrow" (citation omitted)).

"Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802 (rule against hearsay). "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2)) (ellipses and quotation marks omitted).

One hearsay exception, the present sense impression exception, applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.E. 803(1). The rationale for the present sense impression exception is that the "[r]elative immediacy of the declaration ensures that there will have been little opportunity for reflection or calculated misstatement." *Commonwealth v.*

*Coleman*, 326 A.2d 387, 389 (Pa. 1974); *see also id.* ("The declaration is instinctive, rather than deliberative[.]" (citation and quotation marks omitted)). Notably, this Court has held a 911 call may qualify as a present sense impression if the call was placed contemporaneously with the event or is so instantaneous "that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." *Commonwealth v. Cunningham*, 805 A.2d 566, 573 (Pa. Super. 2002); *see also Commonwealth v. Harris*, 658 A.2d 392, 395 (Pa. Super. 1995) (stating the present sense impression exception does not require that the comments be made to another person also present at the scene; rather, the comments may be made over the telephone).

Instantly, the trial court opined Appellant had waived this claim because he never objected to admission of the 911 calls. *See* Trial Court Opinion, 4/15/24, at 13-14; *see also Commonwealth v. Montalvo*, 956 A.2d 926, 936 (Pa. 2008) (stating that in order to preserve a claim on appeal, a party must lodge a timely objection at trial). Specifically, the trial court reasoned:

> The admissibility of the 911 calls was the subject of a motion *in limine* filed by the Commonwealth on May 3, 2022. *See* Commonwealth's Motion *in Limine* to Admit 911 Calls, 5/3/22.[14] At the beginning of [Appellant's] first trial, on May 9, 2022, after jury selection, … [Judge] McDermott addressed the Commonwealth's motion. N.T., 5/9/22, at 31. However, [Attorney] Yacoubian, [] who was [Appellant's] counsel at that

_____

[14] Appellant did not respond to the motion *in limine*.

time, **explicitly did not object to the admissibility of the 911 calls**. *Id.* at 31 ("Your honor, I'm not objecting at this point to the 911 calls."). The Commonwealth later published the [911] calls to the jury without objection from [Attorney Yacoubian]. N.T., 5/10/22, at 37-38. As stated above, [Appellant's] first trial ended in a mistrial and Judge McDermott later recused herself.

During [Appellant's] second trial, … [Attorney] Schultz objected to the admission of the [911] calls and **incorrectly** stated, "the 911 calls… they've already been the subject of prior motions *in limine* prior to the previous trial, and they've all been admitted by Judge McDermott." N.T., 11/14/23, at 58, 82-85. The [c]ourt stated that anything that was previously litigated in front of Judge McDermott is the law of the case and is "preserved to the extent that you raised them in the *in limine* motions" and "to the extent that [Judge McDermott] ruled on them *in limine*." *Id.* at 83-84[; *see also Commonwealth v. Lancit*, 139 A.3d 204, 206 (Pa. Super. 2016) (the "law of the case doctrine bars a judge from revisiting rulings previously decided by another judge of the same [or a higher] court, absent exceptional circumstances." (citation omitted; some capitalization modified)); *Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005) (*en banc*).]

Since [Attorney] Yacoubian never objected to the admissibility of the 911 calls, Judge McDermott never ruled on the Commonwealth's motion. Furthermore, while [Attorney] Schultz purported to object to the admissibility of the [911] calls, he incorrectly represented that the motion [*in limine*] had been litigated by prior counsel in front of Judge McDermott. As a result, the [] judge [who presided over Appellant's second trial] never had an opportunity to rule on the admissibility of the [911] calls. **Since neither Judge McDermott nor the** [**subsequent**] **judge ruled on the admissibility of the calls, the issue was not preserved.** Pa.R.E. 103(a); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Stevenson*, 894 A.2d 759, 766 (Pa. Super. 2006), *appeal denied*, 917 A.2d 846 (Pa. 2007) (same).

Trial Court Opinion, 4/15/24, at 13-14 (emphasis and footnote added; some citations modified). The trial court's reasoning is supported by the record and the law. *See id.* Accordingly, Appellant's claim is waived.

Nevertheless, even if this claim was not waived, we would conclude it lacks merit. Consistent with **Cunningham**, *supra*, the trial court properly admitted the 911 calls under the present sense impression exception. **Cunningham**, 805 A.2d at 573 (holding 911 calls were admissible under present sense impression exception); **see also** Appellant's Brief at 20 (citing **Cunningham** and conceding, "911 calls may be admitted for, *inter alia*, … present sense impression reasons."). We are persuaded by the Commonwealth's argument in its brief:

> Because each of the declarants [in the 911 calls] described what they were actively observing or what they had observed immediately before making the call, all three 911 calls were properly admitted as present sense impression.
>
> The Commonwealth also offered independent corroborating evidence that the [911] callers actually perceived the events they describe[d]. Surveillance footage showed [Appellant] wearing the same clothing as described in the calls and running in the same direction as the calls report. (N.T.[,] 11/14/23, 182; 194–96). Furthermore, the medical examiner testified that [the victim] endured two gunshot wounds, consistent with [the 911] callers['] descriptions of what they heard. (N.T.[,] 11/15/23, 13–19).

Commonwealth's Brief at 23-24.

Based on the foregoing, Appellant's challenge to the trial court's admission of the 911 calls is waived, and also lacks merit. Appellant's fourth issue merits no relief.

In his fifth issue, Appellant contends the trial court improperly denied his motion *in limine* to introduce evidence of the three Detectives' misconduct in unrelated cases. *See* Appellant's Brief at 10-12. Appellant points out that "Detective[s] Mole and Murray have been charged with perjury and [Detective] Suchinsky has been charged with sex crimes." *Id.* at 10; *see also* Motion *in Limine*, 10/20/23, ¶¶ 7-10 (detailing misconduct). According to Appellant, the three Detectives 1) "habitually lied and fabricated evidence" in other cases; and 2) "played a key role in collecting evidence in Appellant's case, including video surveillance and cell phone evidence." *Id.* at 11-12. Appellant argues the prior misconduct of the three Detectives is admissible as habit evidence, pursuant to Pa.R.E. 406, which provides as follows:

> Evidence of a person's habit … may be admitted to prove that on a particular occasion the person … acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or there was an eyewitness.

*Id.*; *see also* Appellant's Brief at 11. Appellant complains, "[a]bsent cross-examination or inquiry, it is impossible to assess [the] taint" that the three Detectives' misconduct may have had upon Appellant's right to a fair trial. Appellant's Brief at 12.

The Commonwealth counters Appellant waived this claim, as he raises it for the first time on appeal and did not preserve it. *See* Commonwealth Brief at 14-15. The Commonwealth cites Pa.R.A.P. 302(a) (providing issues not raised in the lower court are waived and cannot be raised for the first time

on appeal), and ***Commonwealth v. Le***, 208 A.3d 960, 971-72 (Pa. 2019) (citing Rule 302(a) and stating, "where a defendant raises an objection before the trial court on specific grounds, only those grounds are preserved for appeal." (citation omitted)). Commonwealth Brief at 14-15. The Commonwealth correctly points out:

> Although [Appellant's] counsel filed a motion *in limine* before the trial court regarding [the three Detectives'] misconduct, [Appellant] never suggested that the misconduct was admissible as habit evidence[,] but rather[,] vaguely argued that it should be admitted "to impeach [the] witnesses and further [Appellant]'s defenses of improper collection[.]"

***Id.*** at 15 (quoting Motion *in Limine*, 10/20/23, ¶ 14).

The record confirms the Commonwealth's assertion. Accordingly, consistent with ***Le*** and Pa.R.A.P. 302(a), Appellant has waived his challenge pertaining to admissibility of habit evidence related to the three Detectives' misconduct. Nevertheless, even if this issue was not waived, we would conclude the trial court properly denied Appellant's motion *in limine* based upon the thorough reasoning in its Rule 1925 opinion. ***See*** Trial Court Opinion, 4/15/24, at 3-7.

In his sixth and final issue, Appellant argues the trial court abused its discretion in "sentencing Appellant to consecutive, non-guideline sentences beyond the mandatory life sentence imposed for first-degree [m]urder." Appellant's Brief at 28. Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. ***See Commonwealth v. Lawrence***, 313 A.3d 265, 286 (Pa. Super. 2024)

("Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." (citation and brackets omitted)). Rather, where, as here, the appellant preserved his sentencing challenge in a timely motion for reconsideration of sentence, he must (a) include in his appellate brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal; and (b) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Commonwealth v. Summers*, 245 A.3d 686, 691 (Pa. Super. 2021).

Here, Appellant's brief includes a Rule 2119(f) statement. *See* Appellant's Brief at 28-30. Therein, he claims the trial court abused its discretion in imposing an unreasonable sentence "without adequate justification," which was "indicative of a rigid, solitary focus on retribution." *Id.* at 29, 30. These claims present a substantial question. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question."); *Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011) (holding a claim the sentencing court failed to state sufficient reasons for imposing statutory maximum sentences, as required by the Sentencing Code, presents a substantial question); *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (stating a claim that the sentencing court "exceeded the recommended range in the Sentencing Guidelines without an adequate basis

raises a substantial question"). [15] Accordingly, we review the merits of Appellant's challenge to his sentence.

Our standard of review of a discretionary sentencing challenge is well settled: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Reid*, __ A.3d __, 2024 PA Super 200, at *6 (Pa. Super. 2024) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citation and quotation marks omitted); *see also*

_____

[15] However, a sentencing court's

> exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, **the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances**, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015) (emphasis added; internal citations and quotation marks omitted)); *see also Commonwealth v. Morrobel*, 311 A.3d 1153, 1157 (Pa. Super. 2024) (observing "in most cases, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." (citation and quotation marks omitted)).

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014) ("[T]he sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." (citations and quotation marks omitted)). A sentencing court "has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." *Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013) (citation omitted).

In every case where, as here, "a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence." *Commonwealth v. Shull*, 148 A.3d 820, 835-36 (Pa. Super. 2016) (citation omitted); *see also Commonwealth v. Snyder*, 289 A.3d 1121, 1127 (Pa. Super. 2023) (stating sentencing guidelines are "purely advisory in nature," and a "sentencing court is permitted to deviate from the sentencing guidelines" where it places "on the record its reasons for the deviation." (citations omitted)). When doing so,

> a trial judge … [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact

on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted).

This Court has explained the sentencing guidelines

have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors – they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

***Commonwealth v. Holiday***, 954 A.2d 6, 13 (Pa. Super. 2008) (citation omitted). ***But see also Commonwealth v. Rodda***, 723 A.2d 212, 216 (Pa. Super. 1999) (*en banc*) (holding the record must demonstrate "with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.").

The Sentencing Code directs a trial court to follow the general principle that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); ***see also Coulverson***, 34 A.3d at 145 (observing a sentencing court "is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due

consideration by the court of the statutory considerations enunciated in that section." (citations and brackets omitted)).

Further, it "is well settled that 'imposition of consecutive rather than concurrent sentences rests within the trial court's discretion.'" ***Commonwealth v. Foust***, 180 A.3d 416, 434 (Pa. Super. 2018) (quoting ***Commonwealth v. Harvard***, 64 A.3d 690, 703 (Pa. Super. 2013)); ***see also Hill***, 66 A.3d at 370.

> Although Pennsylvania's system stands for individualized sentencing, **the court is not required to impose the "minimum possible" confinement**. Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.

***Commonwealth v. Brown***, 249 A.3d 1206, 1216 (Pa. Super. 2021) (citation omitted; emphasis added). "An appellant is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." ***Lawrence***, 313 A.3d at 286 (emphasis added; citation and brackets omitted); ***see also Foust***, 180 A.3d at 434-35 (collecting cases and stating, "extensive case law in this jurisdiction holds that defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence.").

Here, Appellant claims the trial court abused its discretion in imposing unreasonable, consecutive sentences on the remaining convictions, which were above the sentencing guidelines, "without adequate justification." Appellant's Brief at 31. According to Appellant, "[t]here is a singular and excessive focus on retribution." ***Id.***

The Commonwealth counters the trial court did not abuse its discretion in imposing consecutive, statutory maximum sentences under the circumstances. *See* Commonwealth's Brief at 34-37. According to the Commonwealth, the trial court "thoroughly explained its rational[e] for imposing consecutive maximum sentences for the remaining" convictions. *Id.* at 34. The Commonwealth contends the court appropriately "considered the totality of the circumstances surrounding [Appellant's] convictions, including his repeated threatening and disruptive behavior at trial." *Id.* at 37.

The trial court opined it properly exercised its discretion in imposing a reasonable aggregate sentence under the circumstances:

> Here, the court was required to impose the mandatory term of life in prison without the possibility of parole for [Appellant's] first[-]degree murder conviction. [Appellant's] sentences of 3½ to 7 years['] incarceration for carrying a firearm without a license, 2½ to 5 years['] incarceration for carrying a firearm in public or on the public streets of Philadelphia, 2½ to 5 years['] incarceration for PIC, and 10 to 20 years['] incarceration for possession of firearm by a prohibited person were all departures above the guidelines. In fashioning these sentences, **the court explicitly considered everything presented during the history of the case.** N.T.[,] 11/16/23[,] at 138. This included all the evidence presented at trial, the information presented in both counseled and *pro se* pretrial pleadings, and everything presented at sentencing[,] including the statements [Appellant] made before and during the hearing. *Id.* The court also took into account the required statutory factors. *Id.* at 138-39[; *see also* 42 Pa.C.S.A. § 9721(b), *supra*.] **In considering the need for the protection of the public, the court noted that** [**Appellant**] **was a grave threat to the public given his history of misbehavior**. *Id.* at 138. In considering the gravity of the offense in relation to its impact on the victim and the community, the court noted the loss of Johnson's life at a young age and the profound impact the homicide had on Johnson's family. *Id.* at 138-39. The court also considered [Appellant's] rehabilitative needs. *Id.* at 139.

Additionally, **the court noted on the record its rationale for departing above the guidelines** and imposing consecutive sentences, both of which were eminently reasonable given [Appellant's] history of misbehavior. **The court noted that [Appellant's] contempt for the rule of law and judicial process was "unprecedented"** and that the court had never seen anyone act with such disdain for the rule of law. *Id.* at 139-43. [**Appellant**] **threatened five out of the six lawyers who represented him over the course of the case.** *Id.* at 139-40. He punched his lawyer in the face during his prior trial. *Id.* at 140. At that same trial, he threatened jurors from the adjacency lockup[,] causing jurors to be so upset and feel so threatened that they were unable to continue, which resulted in a mistrial. *Id.* [**Appellant**] **then threatened to kill the Honorable Barbara McDermott**, which caused Judge McDermott to recuse herself from the case. *Id.* Finally, the court noted that, given [Appellant's] history, it fashioned accommodations so that [Appellant] could still participate in trial and [Appellant] immediately, within three minutes of the court's opening remarks, began yelling and had to be removed from the adjacency lockup in order to prevent another mistrial. *Id.* at 140-41. Accordingly, consecutive sentences departing above the guidelines were reasonable.

Trial Court Opinion, 4/15/24, at 22-23 (emphasis added; footnote omitted; some capitalization modified).

Our review discloses the trial court's reasoning is supported by the record, and we agree with its conclusion. *See id.* The court clearly did not abuse its ample discretion in imposing reasonable sentences on the remaining convictions under the circumstances. The record belies Appellant's claim the court imposed sentence based solely on retribution. Accordingly, Appellant's discretionary sentencing claim lacks merit.

Based on the foregoing, as we discern no error of law or abuse of discretion by the trial court, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024

J-S41004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TARRELL RISTER | : | |
| | : | |
| Appellant | : | No. 220 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002723-2018

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED NOVEMBER 26, 2024**

Tarrell Rister (Appellant) appeals from the judgment of sentence imposed following his convictions (a) by a jury of one count each of first-degree murder, firearms not to be carried without a license, carrying a firearm on public property in Philadelphia, and possession of an instrument of crime (PIC); and (b) by the trial court of persons not to possess firearms.[1]  We affirm.

The trial court detailed the evidence presented at trial as follows:

> On December 16, 2017, at approximately 6:20 p.m., the decedent, Muhammaud Johnson [(Johnson or the victim)], met [Appellant] outside of Joe's Market at the corner of Benner Street and Torresdale Avenue in Philadelphia.  N.T., 11/14/23, at 61, 176-79, 184; N.T., 11/15/[23], at 84-85, 172-74.  [Appellant] had previously arranged to purchase marijuana from another man,

_____

[1] *See* 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, 907(a), 6105(a)(1).

Shakur Bennett [(Bennett)], but Bennett sent Johnson to complete the transaction. N.T., 11/15/23, at 173-74. Johnson gave [Appellant] two bags of marijuana and the two men parted ways. N.T., 11/14/23, at 179-80; [N.T.,] 11/15/23, at 173-74, 181-82. At approximately 6:45 p.m., [Appellant] texted Bennett that he wanted "two more." N.T., 11/15/23, at 85, 174-75. At approximately 7:15 p.m., [Appellant] returned to Joe's Market, where he waited for Johnson to arrive. N.T., 11/14/23, at 180-81; N.T., 11/15/23, at 174. A short time later, Johnson also returned to Joe's Market, where he met with [Appellant] outside of the store. N.T., 11/14/23, at 182; N.T., 11/15/23, at 174-75, 182. The two men proceeded westbound down Benner Street together. N.T., 11/14/23, at 182; N.T., 11/15/23, at 182-83. [Appellant] then pulled out a firearm and shot Johnson twice. N.T., 11/14/23, at 183; N.T., 11/15/23, at 17, 175-76. Johnson was struck in the right side of his chest as well as in the middle of his back. N.T., 11/15/23, at 17. [Appellant] then fled on foot eastbound down Benner Street. N.T., 11/14/23, at 182; N.T., 11/15/23, at 175-76, 183.

Police arrived on the 4600 block of Benner Street at approximately 7:30 p.m.[,] where they observed Johnson lying on the ground with bullet holes in his jacket. N.T., 11/14/23, at 61-63, 65-67, 72. Police transported Johnson to Temple University Hospital, where he was later pronounced dead. *Id.* at 66-68, 78. The medical examiner determined that Johnson's cause of death was gunshot wounds to the torso and his manner of death was homicide. N.T., 11/15/23, at 19. [Appellant] was not licensed to carry a firearm on the date of the murder. N.T., 11/16/23, at 16.

Trial Court Opinion, 4/15/24, at 2-3 (citations modified).

Following Appellant's arrest, the Commonwealth charged him with the above-mentioned offenses. As we explain further below, prior to trial, Appellant had numerous court-appointed counsel, each of whom was granted leave to withdraw due to Appellant's inappropriate conduct. In short, Appellant (a) threatened various counsel; and (b) punched his fourth counsel, George Yacoubian, Esquire (Attorney Yacoubian), during Appellant's first jury

trial in May 2022, which resulted in a mistrial. *See* Trial Court Opinion, 4/15/24, at 7-8 (describing Appellant's prior counsel and Appellant's courtroom misbehavior).

Before Appellant's first trial, on May 3, 2022, the Commonwealth filed a "Motion *in Limine* to Admit 911 Calls." The Commonwealth claimed certain 911 calls placed following the shooting (the 911 calls)[2] were relevant and admissible under exceptions to the rule against hearsay (discussed below). *See generally* Motion *in Limine*, 5/3/22. The Commonwealth proffered the 911 calls were

> relevant and probative of the identification of [Appellant], as well as [the victim's] cause of death. The calls are not excludable under the [rule against] hearsay [], regardless of whether the declarant is available as a witness, because [the 911 calls] were made contemporaneously to the events they describe, before the opportunity for reflection, and there is independent evidence to support their veracity.

*Id.* at 1. Appellant did not respond to the motion *in limine*. The trial court granted the motion *in limine* prior to trial.[3]

_____

[2] There were several 911 calls placed by bystanders close to the scene of the murder, three of which are relevant to this appeal. In two of the 911 calls, the declarants reported hearing gunshots, provided a description of the shooter, and told police the direction in which the shooter had fled. *See* Motion *in Limine*, 5/3/22, at 2-3. The declarant in the third 911 call described the victim's injuries and poor condition. *Id.* at 5.

[3] The record does not include an order or docket entry pertaining to the motion *in limine*, though it is clear the motion was granted, as the Commonwealth played the 911 calls at trial. *See* N.T., 11/4/23, at 58-59.

On October 20, 2023, Appellant filed a "Motion *in Limine* to Introduce Police Misconduct" through his sixth attorney, Joseph Schultz, Esquire (Attorney Schultz or defense counsel).[4]  Specifically, Appellant sought to introduce evidence of police misconduct, in unrelated cases, committed by three Philadelphia Police detectives involved in his case: Detective Freddie Mole (Detective Mole), Detective Joseph Murray (Detective Murray), and Detective Donald Suchinsky (Detective Suchinsky) (collectively, "the three Detectives").  Motion *in Limine*, 10/20/23, ¶¶ 7-10 (detailing the misconduct);[5] *see also id.* ¶¶ 3, 4, 6 (stating in the instant case, "Detectives [] Mole and [] Suchinsky were the first homicide detectives to arrive at the crime scene"; "Detective [] Murray was the affiant of three search warrants"; and "Detective Mole recovered video surveillance footage").  The trial court denied Appellant's motion *in limine* on November 8, 2023.

Appellant's second jury trial occurred on November 13-16, 2023. Appellant was represented by Attorney Schultz.  Appellant, the sole defense

_____

[4] Appellant also filed several *pro se*, handwritten motions *in limine*, while he was represented by counsel.  *See Commonwealth v. Willis*, 29 A.3d 393, 400 (Pa. Super. 2011) (observing the "long-standing policy that precludes hybrid representation." (citation omitted)).

[5] The trial court competently summarized the three Detectives' misconduct in its Pa.R.A.P. 1925(a) opinion.  *See* Trial Court Opinion, 4/15/24, at 5-6.

witness, testified[6] that he shot the victim, but maintained he acted in self-defense or imperfect self-defense.[7] **See** N.T., 11/15/23, at 174-77.

On November 16, 2023, the jury found Appellant guilty of first-degree murder, as well as the remaining above-mentioned crimes, and the trial court found him guilty of persons not to possess firearms. The trial court immediately imposed the mandatory sentence of life in prison for the murder charge.[8] N.T., 11/16/23, at 143. Prior to sentencing Appellant on the remaining charges (collectively, "the remaining convictions"), the court referenced Appellant's repeated courtroom misconduct, noting "this is an extraordinary case."[9] **Id.** at 142. Specifically, the trial court stated Appellant's

_____

[6] Appellant testified via pre-recorded video deposition. Before trial, the trial court ruled Appellant had forfeited his right to give live trial testimony due to his repeated, disruptive courtroom misconduct. **See** Order, 6/9/23; Trial Court Opinion, 4/15/24, at 7-11; **see also** N.T., 5/9/23, at 43-45 (trial court warning Appellant, prior to the mistrial, that if he continued his disruptive conduct, he would waive his right to give live testimony).

[7] "Unlike the affirmative defense of self-defense, which is a justification for the crime and, if accepted, results in acquittal, a finding of imperfect self-defense results in conviction of the offense of voluntary manslaughter," rather than homicide. **Commonwealth v. Busanet**, 54 A.3d 35, 52 n.11 (Pa. 2012).

[8] The record does not reveal whether the trial court, in sentencing Appellant, had the benefit of a presentence investigation report.

[9] The trial court also considered the victim impact statements provided by family members of the victim. **See** N.T., 11/16/23, at 123-26. Further, the
*(Footnote Continued Next Page)*

behavior is something that is unprecedented, that I've never seen in the history of all my years in my work here…. I have never seen anything like this or anything close to this, and that's why I am going to give [Appellant] consecutive [sentences on the remaining convictions], and that's the reason for [the court's] departing above the [sentencing] guidelines….

*Id.* at 142-43.

With regard to the remaining convictions, the trial court imposed consecutive, statutory maximum[10] terms of 3½ to 7 years' incarceration for firearms not to be carried without a license; 2½ to 5 years' incarceration for carrying a firearm on public property in Philadelphia; 2½ to 5 years' incarceration for PIC; and 10 to 20 years' incarceration for persons not to possess firearms. Thus, Appellant's aggregate sentence was life in prison plus 18½ to 37 years' incarceration.

Appellant timely filed a post-sentence motion on November 20, 2023. Appellant claimed, in relevant part, "[t]he verdict was against the weight of the evidence as there was such conflicting statements and conflicting physical evidence presented by the Commonwealth that the verdict shocks the consci[ence.]" Post-Sentence Motion, 11/20/23, ¶ 3; *see also id.* ¶ 4

_____

court considered Appellant's lengthy allocution, wherein he complained about Attorney Schultz's representation and asserted his innocence. *Id.* at 130-36.

[10] The sentences for each of the remaining convictions constituted the respective statutory maximums. *See* 18 Pa.C.S.A. §§ 1103(1) and (3), 1104(1); *see also* Trial Court Opinion, 4/15/24, at 22 n.4 (explaining the applicable sentencing guidelines).

(asserting the verdicts were not supported by sufficient evidence). On the same date, Appellant filed a motion for reconsideration of sentence. He claimed the trial court abused its discretion in imposing an unreasonably harsh and excessive aggregate sentence, which failed to account for all relevant sentencing considerations. Motion for Reconsideration, 11/20/23, ¶¶ 12-14.

The trial court denied Appellant's post-sentence motion, and motion for reconsideration, on December 28, 2023. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents six issues for our review:

1. Was there insufficient evidence to sustain Appellant's conviction for first-degree murder beyond a reasonable doubt because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense?

2. Was Appellant's conviction for first-degree murder against the weight of the evidence because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense?

3. Did the trial court err by denying Appellant his Constitutional rights to be present and testify at his trial before the jury and cause irreparable harm to Appellant by not allowing Appellant to be present for his trial and testify in front of the jury?

4. Did the trial court err and cause irreparable harm to Appellant by allowing hearsay 911 calls to be admitted over Appellant's objection?

5. Did the trial court abuse its discretion in denying Appellant's request to introduce evidence [related to the three] detectives involved in Appellant's case[,] when several of the detectives, particularly Detective [] Mole, habitually lied and fabricated

- 7 -

evidence and when these detectives played a key role in collecting evidence in Appellant's case, including video surveillance and cell phone evidence?

6. Did the sentencing court abuse[] its discretion in sentencing Appellant to consecutive, non-guideline sentences beyond the mandatory life sentence imposed for first-degree murder?

Appellant's Brief at 4-5 (issues reordered; some capitalization modified).

Appellant first argues his conviction for first-degree murder cannot stand because it is based on insufficient evidence. *See id.* at 21-24. Appellant emphasizes his trial testimony that "he felt threatened by" the victim and claims, "[t]here is no evidence to rebut this." *Id.* at 21; *see also id.* (asserting the surveillance "video of the incident does not in any way rebut Appellant's testimony that he acted in self-defense or unreasonable self-defense."). According to Appellant,

[t]here is insufficient evidence to sustain Appellant's conviction for first-degree [m]urder beyond a reasonable doubt because the Commonwealth did not prove beyond a reasonable doubt that Appellant acted with specific intent to kill or that Appellant did not act in either justified self-defense or mistaken/unreasonable self-defense.

*Id.* at 23 (citing N.T., 11/15/23, at 171-212 (Appellant's trial testimony)).

The Commonwealth counters the trial court properly rejected Appellant's sufficiency challenge, as the Commonwealth 1) proved beyond a reasonable doubt all elements of first-degree murder; and 2) disproved Appellant's claim of self-defense. *See* Commonwealth Brief at 31-32. The Commonwealth claims "the jury was permitted to … infer[]" Appellant had the "specific intent to kill based on his use of a deadly weapon" in shooting the

victim. ***Id.*** at 32. The Commonwealth further maintains it "proved that [Appellant] did not act out of self-defense or imperfect self-defense…." ***Id.***

A sufficiency claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017). "Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Peters***, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation and brackets omitted); ***see also Commonwealth v. Banniger***, 303 A.3d 1085, 1091 (Pa. Super. 2023) ("Our inquiry is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." (citations and quotation marks omitted)).

> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Peters***, 320 A.3d at 1236 (citation omitted). Further, the Commonwealth "may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."

- 9 -

*Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (citation omitted).

"To convict a defendant of first[-]degree murder, the Commonwealth must prove: a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011) (citations omitted). Our Supreme Court has instructed,

> [a]n intentional killing is one committed by means of poison, lying in wait, or by any other kind of willful, deliberate, and premeditated action. The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill.

*Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007) (internal citations omitted).

Under the Crimes Code, self-defense is a defense of justification, which is a complete defense to criminal liability. *See* 18 Pa.C.S.A. §§ 502, 505. "While there is no burden on a defendant to prove [a] claim [of self-defense], before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

> Self-defense is a complete defense to a homicide charge if (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; (2) the defendant did not provoke the threat that resulted in the slaying; and (3) the defendant did not violate a duty to retreat. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three

- 10 -

elements is absent. If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.

*Commonwealth v. Jones* 271 A.3d 452, 458 (Pa. Super. 2021) (internal citations omitted). Moreover, the fact-finder "is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense." *Id.* (citing *Houser*, 18 A.3d at 1135).

Here, the trial court stated in its Pa.R.A.P. 1925(a) opinion that the evidence was sufficient to sustain Appellant's first-degree murder conviction and disprove his claim of self-defense:

> [Appellant's] argument that the Commonwealth failed to disprove his claim of self-defense is frivolous. While [Appellant] testified that he acted in self-defense, his testimony was contradicted by [defense] counsel's entire trial strategy as well as [Appellant's] own *pro se* pleadings.
>
> Defense counsel's opening statement unequivocally presented a theory of misidentification. *See* N.T., 11/14/23, at 52-56. In fact, in his opening statement, [defense] counsel stated[,] "this [case] is all about the identification … [m]ake no other qualms about it … the video says what happens. You're going to see what happens. The question now before you is, who did it?" *Id.* at 55. Furthermore, the Commonwealth cross-examined [Appellant] with numerous *pro se* pretrial pleadings that were inconsistent with a self-defense theory. *See* N.T., 11/15/23, at 191-98. [Appellant] admitted that none of those pretrial pleadings were consistent with his testimony regarding self-defense. *Id.* at 193-95. Additionally, [Appellant] testified that it was defense counsel's strategy not to raise self-defense and that, while he disagreed with defense counsel, he believed that he needed to comply with defense counsel's theory of the case in

- 11 -

order to win pretrial motions and effectively litigate the case. *Id.* at 186, 193-94.[FN1]

---

[FN1] During sentencing, [Appellant] conceded that his testimony regarding self-defense was false, and maintained that he perjured himself, pursuant to the advice of [defense] counsel, in order to obtain a manslaughter instruction. *See* N.T., 11/16/23, at 130.

---

Moreover, [Appellant's] testimony, which was the only evidence presented suggesting that [Appellant] acted in self-defense, was refuted by the other evidence presented at trial. Most importantly, **the surveillance video did not show that Johnson had a weapon or that he made any threatening motions toward** [**Appellant**] during any of their interactions. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). There was no evidence presented at trial showing that Johnson possessed a weapon on the night of the shooting. Furthermore, while [Appellant] testified that Johnson told him to walk up Benner Street to a dark location, which was the reason that [Appellant] stated he feared Johnson would rob and kill him, the video showed [Appellant] motion for Johnson to walk up Benner Street and, as the two men began to walk up Benner Street, [Appellant] led the way. N.T., 11/15/23, at 174-77; Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video). Additionally, while [Appellant] testified that Johnson was reaching into his pockets, [**Appellant**] **never stated that he saw Johnson with a weapon.** *See* N.T., 11/15/16, at 171-212. In sum, the video shows [Appellant], unprovoked, pull out a firearm and shoot the unarmed victim, [] then flee down Benner Street. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video).

[**Appellant's**] **testimony that he acted in self-defense was also undermined by his paradoxical denial that he was the shooter in the surveillance video**. While [Appellant] admitted to shooting Johnson, he denied that he was the shooter depicted in the surveillance video. N.T., 11/15/23, at 174-77, 182-83, 198-211. However, the Commonwealth convincingly established that [Appellant] was the man in the video. The video clearly captured the face of the shooter, which looked exactly like [Appellant]. *See* Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); Commonwealth Exhibit C-2

- 12 -

(Photograph of [Appellant]).[FN2]  Furthermore, the shooter approached Joe's Market from the east side of Torresdale Avenue, which was consistent with where [Appellant] lived at the time of the murder.  Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); N.T. 11/15/23 at 172, 201-02.  Additionally, the shooter appeared taller than Johnson, who was six-foot-four-inches tall.  Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video); N.T., 11/15/23, at 19.  [Appellant] is six-foot five-inches tall.  N.T., 11/15/23, at 118; Commonwealth Exhibit C-34 (Pennsylvania Certified Driver History).

---

[FN2] Since [Appellant] was not present in court with the jury, the Commonwealth published Exhibit C-2 so the jury could see [Appellant's] face.

---

Furthermore, **cell phone records also corroborated that [Appellant] was the shooter** depicted in the video.  The Commonwealth presented a cell phone extraction of the phone found next to the [victim].  N.T., 11/15/23, at 76-77.  The extraction included phone calls and text messages between the phone found next to the [victim] and the number registered to [Appellant].  *Id.* at 77.  These calls and text messages occurred on December 16, 2017, the date of the murder, between approximately 5:50 p.m. and 7:20 p.m.  *Id.* at 81-86; Commonwealth Exhibit C-20 (Phone Extraction Report).  These text messages and calls lined up with actions the shooter took on the video.  *See* Commonwealth Exhibit C-20 (Phone Extraction Report); Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video).  For example, at approximately 7:18 p.m., the shooter is seen making a phone call on the surveillance video.  Commonwealth Exhibit C-32 (Surveillance Footage Compilation Video).  The call records show that a call was placed at approximately 7:18 p.m. from the number associated with [Appellant] to the phone found next to the [victim].  Commonwealth Exhibit C-20 (Phone Extraction Report).

All of this was compelling proof that completely refuted [Appellant's] claim of self-defense.  Furthermore, based upon the evidence adduced at trial by both the Commonwealth and defense, [**Appellant's**] **testimony that he acted in self-defense was utterly incredible**.  The jury was free to reject his

- 13 -

testimony. *See Ramtahal*, 33 A.3d at 607.

Trial Court Opinion, 4/15/24, at 16-19 (emphasis added; footnotes in original; some citations and capitalization modified). The trial court additionally found that Appellant's use of a deadly weapon on a vital part of the victim's body "was sufficient evidence to show that [Appellant] acted with specific intent to kill." *Id.* at 19; *see also Rega*, 933 A.2d at 1009.

Our review confirms the trial court's reasoning is supported by the record and we agree with its conclusion. *See id.* at 16-19. Appellant essentially asks us to 1) ignore the evidence of his guilt (including compelling surveillance video); 2) reweigh the evidence, viewed in a light most favorable to him; and 3) substitute our judgment for that of the jury and credit Appellant's justification defense. This we cannot do. *See Jones* 271 A.3d at 458 (stating **the fact-finder "is not required to believe the defendant's testimony that he thought that he was in imminent danger and acted in self-defense."** (emphasis added)). Because the Commonwealth clearly produced sufficient, overwhelming evidence establishing all elements of first-degree murder beyond a reasonable doubt, his sufficiency challenge does not merit relief.

In his second issue, Appellant argues the jury's verdict of guilty for first-degree murder is against the weight of the evidence.[11] *See* Appellant's Brief at 24-27. Appellant repeats essentially the same argument he raised in connection with his sufficiency challenge. Namely, he 1) emphasizes his trial testimony that "he felt threatened by" the victim and "feared for his safety prior to shooting" him, *id.* at 24, 27; and 2) claims "video of the incident does not in any way rebut Appellant's testimony that he acted in self-defense or unreasonable self-defense." *Id.* at 27. Accordingly, Appellant contends the trial court erred in denying his post-sentence motion for a new trial. *Id.*

The Commonwealth counters the trial court properly exercised its discretion in rejecting Appellant's weight claim. *See* Commonwealth Brief at 32-34. "Because the evidence demonstrating that [Appellant] did not act out of self-defense or imperfect self-defense was overwhelming, [Appellant's weight] claim is meritless." *Id.* at 32; *see also id.* at 33 (correctly pointing out "the only evidence [Appellant] proffered that he acted out of self-defense or imperfect self-defense was his own testimony."). According to the Commonwealth, the "verdict did not shock the consci[ence] because the jury accepted the objective facts rather than [Appellant's] self-contradicting testimony." *Id.* at 34.

_____

[11] Appellant preserved this issue, as required by Pa.R.Crim.P. 607, by raising it with the trial court in a post-sentence motion. *See* Post-Sentence Motion, 11/20/23, ¶ 3.

- 15 -

We review a trial court's ruling on a challenge to the verdict as against the weight of the evidence for an abuse of discretion. ***Banniger***, 303 A.3d at 1095; ***see also Commonwealth v. Harrington***, 262 A.3d 639, 646 (Pa. Super. 2021) ("An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." (citation omitted)).

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a palpable abuse of discretion will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (internal citations, emphasis, and quotation marks omitted); ***see also Commonwealth v. Sanchez***, 262 A.3d 1283, 1288 (Pa. Super. 2021) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate

court to substitute its judgment based on a cold record for that of the trial court."). "It is well settled that the fact-finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses…." **Commonwealth v. James**, 297 A.3d 755, 768 (Pa. Super. 2023) (citation omitted).

Here, the trial court opined it properly exercised its discretion in rejecting Appellant's weight claim, and found the guilty verdict for first-degree murder was amply supported by the evidence and did not shock the court's conscience. **See** Trial Court Opinion, 4/15/24, at 20. We decline Appellant's invitation to assume the role of the fact-finder, reweigh the evidence on appeal, and usurp the jury's credibility determinations concerning, *inter alia*, Appellant's self-serving and self-contradictory trial testimony. Upon review, we conclude the trial court properly exercised its discretion in denying Appellant's weight claim. **See Commonwealth v. Scott**, 146 A.3d 775, 778 (Pa. Super. 2016) (stating an appellate court will not disturb the fact-finder's credibility findings that are supported by evidence of record); **Commonwealth v. Santiago**, 980 A.2d 659, 664 (Pa. Super. 2009) (holding trial court properly exercised discretion in denying a weight challenge where the appellant asked this Court to reweigh the evidence). Consequently, Appellant's second issue merits no relief.

In his third issue, Appellant claims the trial court unlawfully deprived him of his right to be physically present for trial. **See** Appellant's Brief at 12-

14. Although Appellant concedes he "had engaged in courtroom misconduct previously," *id.* at 12, he maintains "there was minimal misconduct in the second trial and denial of the right to be present and testify before the jury prejudiced Appellant." *Id.* According to Appellant, "[t]he trial court abused its discretion and Appellant was harmed because the jury could only assume that Appellant was guilty because he could not even be in the courtroom." *Id.* at 14; *see also id.* ("Alternative measures were not adequately considered.").

The Commonwealth conversely argues the trial court did not violate Appellant's right to be physically present during trial, as he had forfeited this non-absolute right due to his repeated courtroom misconduct. *See* Commonwealth Brief at 16-21.

> [Appellant's] egregiously disruptive, violent, and threatening behavior, even after [a] warning from the [trial] court, fully supported the trial court's conclusion that [Appellant] had forfeited his right to be present. Given [Appellant's] behavior throughout his case, it was exceedingly likely that that he would again engage in threatening or disruptive behavior before the jury if permitted to testify in-person. Thus, the court fashioned a reasonable alternative that preserved [Appellant's] rights to testify. Accordingly, neither his right to be present nor his right to testify were violated.

*Id.* at 16. The Commonwealth points out Appellant "cites no authority to suggest that a court must overlook the prior behavior of a defendant after that very behavior led to a mistrial." *Id.* at 18.

It is well-settled that "[a] criminal defendant has both a rule-based right to be present for trial, Pa.R.Crim.P. 602, as well as a constitutional right." *Commonwealth v. Tejada*, 188 A.3d 1288, 1293 (Pa. Super. 2018); *see*

- 18 -

*also Commonwealth v. Kelly*, 78 A.3d 1136, 1141 (Pa. Super. 2013)

(explaining the constitutional right). However, this right is not absolute.

*Tejada*, 188 A.3d at 1293.

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Id.* (citation omitted); *see also Commonwealth v. Baldwin*, 58 A.3d 754,

764 (Pa. 2012) (stating while a defendant has the right to testify, this right

"is not without parameters, and cannot be used as a vehicle for a defendant

to obviate the rules of trial procedure and evidence."). "[A] judge has the

responsibility and authority to maintain in the courtroom the appropriate

atmosphere for the fair and orderly disposition of the issues presented."

*Commonwealth v. Chester*, 587 A.2d 1367, 1379 (Pa. 1991).

Here, the trial court opined it did not violate Appellant's rights or err in

ruling he had forfeited his right to give live trial testimony:

> [Appellant] forfeited his right to be present through his disorderly, disruptive and disrespectful behavior. [Appellant] was originally represented by privately retained counsel, Allan Sagot, Esquire, who moved to withdraw after claiming [Appellant] failed to pay him. [Appellant's] next four appointed attorneys all withdrew due to [Appellant's] behavior. Attorney Deborah Nixon complained of hostile telephone calls from [Appellant] in which [Appellant] screamed, used profanity, threatened "to sabotage" her, and stated there would be a "gang war" with her. N.T., 8/26/19, at 15-20. Attorney Benjamin Cooper, the next to serve, withdrew after [Appellant] accused him of collaborating with the prosecution and filed a complaint about him with the FBI. … Attorney Eileen

Hurley, who took over next, withdrew after [Appellant] made threats against her.

On May 9, 2022, [Appellant's] initial jury trial began before the Honorable Barbara McDermott. [Attorney] Yacoubian … represented [Appellant]. Based upon [Appellant's] long history of issues with prior counsel, the court asked [Appellant] if he was ready to proceed with [Attorney] Yacoubian representing him. N.T., 5/9/22, at 12-14. [Appellant] confirmed that he was ready to proceed. *Id.* After the jury was sworn in, as [Appellant had] entered his not guilty plea, [Appellant] stated that [Attorney] Yacoubian was "railroading" him and had not subpoenaed witnesses. *Id.* at 40-42. The court cleared the jurors from the courtroom. *Id.* At that time, [Appellant] warned [Attorney] Yacoubian not to "play with [him]." *Id.* at 41-42. [Attorney] Yacoubian asked [Appellant] if [Appellant] was threating him, to which [Appellant] responded, "I said don't play with me." *Id.* The court then warned [Appellant] that if he had another outburst he would be removed from the courtroom. *Id.* at 42-43. [Appellant] confirmed he understood the warning. *Id.* at 44-46.

Two days later, on May 11, 2022, as the Commonwealth called its first witness of the day's proceedings, [**Appellant**] **punched** [**Attorney**] **Yacoubian in the face**. N.T., 5/11/22, at 14-16. The court immediately removed the jurors from the courtroom and sent them to the courtroom next door. *Id.* at 14-19, 24. [Appellant] was removed from the courtroom by the sheriff and placed in the lockup located in the [cell block] next to the courtroom [(adjacency lockup)]. *Id.* at 17[; *see also id.* at 23-24 (trial court stating the configuration "of the courtroom … is such that the cell block is immediately next to the courtroom."). Appellant] then began screaming from the adjacency lockup. *Id.* [at 17. Appellant] accused Judge McDermott of colluding with the District Attorney's Office. *Id.* at 17-21. Moreover, [Appellant] began threatening [Attorney] Yacoubian's family stating, "I know where your kids are at, George" and "I don't know why you would do this, George. You know I know where your fucking family lives at, George." *Id.* at 17-21. [Appellant] then began yelling juror numbers and stating "y'all know what y'all are doing." *Id.* at 22-23. At that point, Judge McDermott had [Appellant] removed from the adjacency lockup to the court's main holding center. *Id.* at 22-26.

Judge McDermott brought the jurors back into the courtroom to explain the delay and then individually colloqu[i]ed them about whether they could still be fair. *Id.* at 30-56. During the individual colloquies, it became apparent that the jurors had seen [Appellant] punch [Attorney] Yacoubian, heard [Appellant's] threats and shouting from the [adjacency lockup], and felt threatened by [Appellant's] behavior. *Id.* Out of fourteen jurors, only two stated they could potentially still be fair. *Id.* [Attorney] Yacoubian motioned for a mistrial and the court granted [Attorney] Yacoubian's motion. *Id.* at 19, 56-60.

At a status listing on February 16, 2023, Judge McDermott again had to remove [Appellant] from the courtroom after [Appellant] continued to interrupt the court and accused Judge McDermott of lying. N.T., 2/16/23, at 27. As sheriffs removed [Appellant], he began mouthing words and yelling obscenities at the court. *Id.* at 28. A court officer reported to the court that [**Appellant**] **was mouthing the phrase "I will kill you" to Judge McDermott** as [Appellant] was removed from the courtroom. *Id.* at 33. As sheriffs removed [Appellant] from the adjacency lockup to the main holding center located in the basement of the courthouse, [Appellant] threatened Judge McDermott again by stating "[b]itch, you've got something to worry about, not the lawyer." *Id.* at 34-35. Based upon this behavior, Judge McDermott recused herself from the case and the case was reassigned to the [] judge [who authored the Pa.R.A.P. 1925(a) opinion, the Honorable Glenn B. Bronson.]

On June 9, 2023, th[e trial] court issued an order, which outlined [Appellant's] long history of misbehavior and ordered that [Appellant] had forfeited his right to be present for trial as well as his right to proceed *pro se*. However, the court agreed to allow [Appellant] to be present in the courthouse during his trial and watch it via audio-visual transmission from the adjacency lockup. The court moved [Appellant's] trial to a larger courtroom[,] where the adjacency lockup is located farther from the jury box so that the jurors would not be able to hear [Appellant] if he yelled disruptive threats as he had in the initial trial. Additionally, the court arranged to have a camera capture a live feed of the proceedings, which would be broadcasted directly to [Appellant] in the adjacency lockup.

[Appellant's] trial began with jury selection on November 13, 2023, under the aforementioned restrictions. The next day,

just minutes after the jury was sworn in as the court gave preliminary instructions, [Appellant] began yelling from the adjacency lockup. N.T., 11/14/23, at 14. Unfortunately, even in the larger courtroom, [Appellant] was able to yell loud enough to be heard by the jurors. The court immediately removed the jurors from the courtroom. *Id.* As the court heard argument from counsel regarding whether [Appellant] could remain in the adjacency [lockup] going forward, [Appellant] continuously yelled from the adjacency [lockup] and disrupted the proceedings. *Id.* at 14-21. At that point, the court ruled that [Appellant] had forfeited his right to be present in the adjacency [lockup] with a live feed of the proceedings. *Id.* at 15-20. The court had [Appellant] removed from the adjacency lockup to the court's main holding center. *Id.* at 21-22. Once [Appellant] was removed, the jurors were brought back to the courtroom. *Id.* at 24. After consulting with both defense counsel and the assistant district attorney, the court informed the jurors that "[w]e did have a slight disturbance, which has been rectified, so we're going to continue on now with our trial." *Id.* at 22-24.

Therefore, [**Appellant's**] **long history of outrageous behavior necessitated a trial *in absentia***. In [Appellant's] first trial, he physically assaulted [Attorney Yacoubian] in full view of the jury and then threatened jurors …, which caused a mistrial. At a later status hearing, [Appellant] threatened to kill the [Judge] McDermott, which caused Judge McDermott to recuse herself from the case. After the case was reassigned …, **the [trial] court attempted to make every accommodation to balance [Appellant's] right to be present with the need to try the case fairly. Even under such accommodations, [Appellant] still could not maintain proper decorum and had to be removed in order to prevent another mistrial.** Since [Appellant] forfeited his right to be present through his behavior in the courtroom, the court did not err in barring [Appellant] from the courtroom during his trial. *See Tejada*, 188 A.3d at 1293-94.

Trial Court Opinion, 4/15/24, at 7-11 (emphasis added; some citations and capitalization modified).

The trial court continued:

- 22 -

Additionally, having forfeited his right to be present in the courtroom, [Appellant] necessarily forfeited his right to testify in front of the jury. Nonetheless, the [trial c]ourt permitted [Appellant] to testify by recorded trial deposition, which obviated the concern that [Appellant] would misbehave in order to cause another mistrial. [Appellant's] testimony was taken in a manner similar to a Pa.R.Crim.P. 500 preservation hearing. [12] [Appellant's] testimony was recorded on video in the courtroom. All parties were situated exactly as they would have been at trial, with the sole exception that the jury was not present. Both the attorney for the Commonwealth as well as defense counsel conducted the questioning…. Furthermore, the [c]ourt did not require the [Appellant] to decide whether to testify until after the Commonwealth had rested.

*Id.* at 11-12 (footnote added).

Our review discloses the trial court's cogent reasoning is supported by the law and the record, and we agree with its conclusion. *See id.* at 7-12; *see also Tejada*, 188 A.3d at 1293.

Moreover, Appellant cannot show prejudice, as the trial court issued several cautionary instructions to the jury regarding Appellant testifying by video in lieu of live testimony. Specifically, prior to jury selection, the court instructed as follows:

The defendant in this case, ladies and gentlemen, is [Appellant]. And as you folks can see he is not here in this courtroom. He is, however, able to see and hear everything that is going on during this trial through an audio-visual system that we have set up here in this courtroom.

---

[12] Rule 500 provides, in relevant part, a trial court "may order the taking and preserving of the testimony of any witness who may be unavailable for trial …, or when due to exceptional circumstances, it is in the interests of justice that the witness' testimony be preserved." Pa.R.Crim.P. 500(A)(1).

In addition, he will be able to confer with his attorney, [Attorney] Schultz, here throughout the course of this trial. Now, the reason that we are proceeding in this fashion is not something you should concern yourselves with. I need you folks to understand -- and this is important -- that it is completely lawful for us to proceed in this way under the circumstances of this case.

In addition, folks, if you are selected to be on this jury **you may not in any manner consider the fact that** [**Appellant**] **is attending the trial through audio-visual communication when you're making your decision in this case. In other words, you may not hold it against** [**Appellant**] or against the Commonwealth or against anybody else connected with this case.

N.T., 11/13/23, at 19-20 (emphasis added).

Moreover, the trial court questioned the prospective jurors prior to jury selection:

**Is there anybody here who believes that because** [**Appellant**] **will be participating in this trial through audio-visual communication and will not be here in the courtroom that you would be unable to be a fair and an impartial juror in this case**, in other words, [Appellant's] absence from the courtroom would substantially interfere with or prevent you from being a fair and an impartial juror?

*Id.* at 25 (emphasis added). No juror responded in the affirmative. *Id.*

Before Appellant's recorded testimony was played for the reconvened jury, the trial court again instructed the jury:

[Appellant] has decided to testify in this case, and you are going to hear from him. However, for logistical purposes that need not concern you, you will be hearing his testimony by way of what we call a trial deposition, which is completely lawful in this case. What this means is that this testimony was recorded today after the Commonwealth presented all of its evidence and rested, okay? That's why we had this long break.

[Attorney] Schultz was there to ask questions on direct examination; … the assistant district attorney[] cross-examined

- 24 -

[Appellant]; and I was there to rule on any objections. And **I instruct you to consider this testimony just as if you were sitting here live and listening to it.** You may not hold it against [Appellant] or the Commonwealth or anyone else connected with this case that the testimony is being presented in this fashion, okay?

N.T., 11/15/23, at 217-18 (emphasis added); *see also* N.T., 11/16/23, at 57-58 (trial court's final charge to the jury, wherein it repeated essentially the same instructions detailed *supra*).[13]

It is well established that a jury is presumed to follow a trial court's instructions. *Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004) ("It is presumed the jury follows [a trial] court's instructions."); *Commonwealth v. Watkins*, 843 A.2d 1203, 1216 (Pa. 2003) (stating a jury "is assumed to have followed" a cautionary instruction, and such an instruction "is presumed to be sufficient to cure any prejudice"). Based on the foregoing, there is no merit to Appellant's claim he was unlawfully tried *in absentia*.

In his fourth issue, Appellant contends the trial court erred in granting the Commonwealth's motion *in limine* and admitting inadmissible hearsay evidence in the form of the 911 calls. *See* Appellant's Brief at 14-20. Appellant claims that a "verdict based in any material respect on inadmissible hearsay is unreliable because inadmissible hearsay by definition is unreliable."

_____

[13] We note Attorney Schultz did not object to the trial court's cautionary instructions. *See Commonwealth v. Page*, 965 A.2d 1212, 1222 (Pa. Super. 2009) ("Because [a]ppellant did not object to the [trial court's cautionary] instruction, any claim in relation to its adequacy is waived.") (citations omitted).

*Id.* at 19 (emphasis omitted).  Appellant contends the trial court's erroneous ruling "caused irreparable harm to Appellant."  *Id.* at 20.

Appellant's claim implicates the admissibility of evidence and the trial court's ruling on the Commonwealth's motion *in limine*; we review such rulings for an abuse of discretion.  *Commonwealth v. Mangel*, 181 A.3d 1154, 1158 (Pa. Super. 2018); *see also Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (stating the "standard of review for a trial court's evidentiary rulings is narrow" (citation omitted)).

"Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence."  *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802 (rule against hearsay).  "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted."  *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2)) (ellipses and quotation marks omitted).

One hearsay exception, the present sense impression exception, applies to "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Pa.R.E. 803(1).  The rationale for the present sense impression exception is that the "[r]elative immediacy of the declaration ensures that there will have been little opportunity for reflection or calculated misstatement."  *Commonwealth v.*

*Coleman*, 326 A.2d 387, 389 (Pa. 1974); *see also id.* ("The declaration is instinctive, rather than deliberative[.]" (citation and quotation marks omitted)). Notably, this Court has held a 911 call may qualify as a present sense impression if the call was placed contemporaneously with the event or is so instantaneous "that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation." *Commonwealth v. Cunningham*, 805 A.2d 566, 573 (Pa. Super. 2002); *see also Commonwealth v. Harris*, 658 A.2d 392, 395 (Pa. Super. 1995) (stating the present sense impression exception does not require that the comments be made to another person also present at the scene; rather, the comments may be made over the telephone).

Instantly, the trial court opined Appellant had waived this claim because he never objected to admission of the 911 calls. *See* Trial Court Opinion, 4/15/24, at 13-14; *see also Commonwealth v. Montalvo*, 956 A.2d 926, 936 (Pa. 2008) (stating that in order to preserve a claim on appeal, a party must lodge a timely objection at trial). Specifically, the trial court reasoned:

> The admissibility of the 911 calls was the subject of a motion *in limine* filed by the Commonwealth on May 3, 2022. *See* Commonwealth's Motion *in Limine* to Admit 911 Calls, 5/3/22.[14] At the beginning of [Appellant's] first trial, on May 9, 2022, after jury selection, … [Judge] McDermott addressed the Commonwealth's motion. N.T., 5/9/22, at 31. However, [Attorney] Yacoubian, [] who was [Appellant's] counsel at that

_____

[14] Appellant did not respond to the motion *in limine*.

time, **explicitly did not object to the admissibility of the 911 calls**. *Id.* at 31 ("Your honor, I'm not objecting at this point to the 911 calls."). The Commonwealth later published the [911] calls to the jury without objection from [Attorney Yacoubian]. N.T., 5/10/22, at 37-38. As stated above, [Appellant's] first trial ended in a mistrial and Judge McDermott later recused herself.

During [Appellant's] second trial, … [Attorney] Schultz objected to the admission of the [911] calls and **incorrectly** stated, "the 911 calls… they've already been the subject of prior motions *in limine* prior to the previous trial, and they've all been admitted by Judge McDermott." N.T., 11/14/23, at 58, 82-85. The [c]ourt stated that anything that was previously litigated in front of Judge McDermott is the law of the case and is "preserved to the extent that you raised them in the *in limine* motions" and "to the extent that [Judge McDermott] ruled on them *in limine*." *Id.* at 83-84[; *see also Commonwealth v. Lancit*, 139 A.3d 204, 206 (Pa. Super. 2016) (the "law of the case doctrine bars a judge from revisiting rulings previously decided by another judge of the same [or a higher] court, absent exceptional circumstances." (citation omitted; some capitalization modified)); *Commonwealth v. McCandless*, 880 A.2d 1262, 1267 (Pa. Super. 2005) (*en banc*).]

Since [Attorney] Yacoubian never objected to the admissibility of the 911 calls, Judge McDermott never ruled on the Commonwealth's motion. Furthermore, while [Attorney] Schultz purported to object to the admissibility of the [911] calls, he incorrectly represented that the motion [*in limine*] had been litigated by prior counsel in front of Judge McDermott. As a result, the [] judge [who presided over Appellant's second trial] never had an opportunity to rule on the admissibility of the [911] calls. **Since neither Judge McDermott nor the** [**subsequent**] **judge ruled on the admissibility of the calls, the issue was not preserved.** Pa.R.E. 103(a); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Stevenson*, 894 A.2d 759, 766 (Pa. Super. 2006), *appeal denied*, 917 A.2d 846 (Pa. 2007) (same).

Trial Court Opinion, 4/15/24, at 13-14 (emphasis and footnote added; some citations modified). The trial court's reasoning is supported by the record and the law. *See id.* Accordingly, Appellant's claim is waived.

Nevertheless, even if this claim was not waived, we would conclude it lacks merit. Consistent with **Cunningham**, *supra*, the trial court properly admitted the 911 calls under the present sense impression exception. **Cunningham**, 805 A.2d at 573 (holding 911 calls were admissible under present sense impression exception); **see also** Appellant's Brief at 20 (citing **Cunningham** and conceding, "911 calls may be admitted for, *inter alia*, … present sense impression reasons."). We are persuaded by the Commonwealth's argument in its brief:

> Because each of the declarants [in the 911 calls] described what they were actively observing or what they had observed immediately before making the call, all three 911 calls were properly admitted as present sense impression.
>
> The Commonwealth also offered independent corroborating evidence that the [911] callers actually perceived the events they describe[d]. Surveillance footage showed [Appellant] wearing the same clothing as described in the calls and running in the same direction as the calls report. (N.T.[,] 11/14/23, 182; 194–96). Furthermore, the medical examiner testified that [the victim] endured two gunshot wounds, consistent with [the 911] callers['] descriptions of what they heard. (N.T.[,] 11/15/23, 13–19).

Commonwealth's Brief at 23-24.

Based on the foregoing, Appellant's challenge to the trial court's admission of the 911 calls is waived, and also lacks merit. Appellant's fourth issue merits no relief.

In his fifth issue, Appellant contends the trial court improperly denied his motion *in limine* to introduce evidence of the three Detectives' misconduct in unrelated cases. *See* Appellant's Brief at 10-12. Appellant points out that "Detective[s] Mole and Murray have been charged with perjury and [Detective] Suchinsky has been charged with sex crimes." *Id.* at 10; *see also* Motion *in Limine*, 10/20/23, ¶¶ 7-10 (detailing misconduct). According to Appellant, the three Detectives 1) "habitually lied and fabricated evidence" in other cases; and 2) "played a key role in collecting evidence in Appellant's case, including video surveillance and cell phone evidence." *Id.* at 11-12. Appellant argues the prior misconduct of the three Detectives is admissible as habit evidence, pursuant to Pa.R.E. 406, which provides as follows:

> Evidence of a person's habit … may be admitted to prove that on a particular occasion the person … acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or there was an eyewitness.

*Id.*; *see also* Appellant's Brief at 11. Appellant complains, "[a]bsent cross-examination or inquiry, it is impossible to assess [the] taint" that the three Detectives' misconduct may have had upon Appellant's right to a fair trial. Appellant's Brief at 12.

The Commonwealth counters Appellant waived this claim, as he raises it for the first time on appeal and did not preserve it. *See* Commonwealth Brief at 14-15. The Commonwealth cites Pa.R.A.P. 302(a) (providing issues not raised in the lower court are waived and cannot be raised for the first time

on appeal), and ***Commonwealth v. Le***, 208 A.3d 960, 971-72 (Pa. 2019) (citing Rule 302(a) and stating, "where a defendant raises an objection before the trial court on specific grounds, only those grounds are preserved for appeal." (citation omitted)). Commonwealth Brief at 14-15. The Commonwealth correctly points out:

> Although [Appellant's] counsel filed a motion *in limine* before the trial court regarding [the three Detectives'] misconduct, [Appellant] never suggested that the misconduct was admissible as habit evidence[,] but rather[,] vaguely argued that it should be admitted "to impeach [the] witnesses and further [Appellant]'s defenses of improper collection[.]"

***Id.*** at 15 (quoting Motion *in Limine*, 10/20/23, ¶ 14).

The record confirms the Commonwealth's assertion. Accordingly, consistent with ***Le*** and Pa.R.A.P. 302(a), Appellant has waived his challenge pertaining to admissibility of habit evidence related to the three Detectives' misconduct. Nevertheless, even if this issue was not waived, we would conclude the trial court properly denied Appellant's motion *in limine* based upon the thorough reasoning in its Rule 1925 opinion. ***See*** Trial Court Opinion, 4/15/24, at 3-7.

In his sixth and final issue, Appellant argues the trial court abused its discretion in "sentencing Appellant to consecutive, non-guideline sentences beyond the mandatory life sentence imposed for first-degree [m]urder." Appellant's Brief at 28. Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. ***See Commonwealth v. Lawrence***, 313 A.3d 265, 286 (Pa. Super. 2024)

("Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." (citation and brackets omitted)). Rather, where, as here, the appellant preserved his sentencing challenge in a timely motion for reconsideration of sentence, he must (a) include in his appellate brief a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal; and (b) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. ***Commonwealth v. Summers***, 245 A.3d 686, 691 (Pa. Super. 2021).

Here, Appellant's brief includes a Rule 2119(f) statement. ***See*** Appellant's Brief at 28-30. Therein, he claims the trial court abused its discretion in imposing an unreasonable sentence "without adequate justification," which was "indicative of a rigid, solitary focus on retribution." ***Id.*** at 29, 30. These claims present a substantial question. ***See Commonwealth v. Allen***, 24 A.3d 1058, 1064-65 (Pa. Super. 2011) ("[A] claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question."); ***Commonwealth v. Coulverson***, 34 A.3d 135, 143 (Pa. Super. 2011) (holding a claim the sentencing court failed to state sufficient reasons for imposing statutory maximum sentences, as required by the Sentencing Code, presents a substantial question); ***Commonwealth v. Sheller***, 961 A.2d 187, 190 (Pa. Super. 2008) (stating a claim that the sentencing court "exceeded the recommended range in the Sentencing Guidelines without an adequate basis

raises a substantial question"). [15]   Accordingly, we review the merits of Appellant's challenge to his sentence.

Our standard of review of a discretionary sentencing challenge is well settled: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Reid*, __ A.3d __, 2024 PA Super 200, at *6 (Pa. Super. 2024) (citation omitted).   "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citation and quotation marks omitted); *see also*

_____

[15] However, a sentencing court's

> exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, **the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances**, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015) (emphasis added; internal citations and quotation marks omitted)); *see also Commonwealth v. Morrobel*, 311 A.3d 1153, 1157 (Pa. Super. 2024) (observing "in most cases, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." (citation and quotation marks omitted)).

*Commonwealth v. Pasture*, 107 A.3d 21, 27 (Pa. 2014) ("[T]he sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." (citations and quotation marks omitted)). A sentencing court "has broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." *Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013) (citation omitted).

In every case where, as here, "a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence." *Commonwealth v. Shull*, 148 A.3d 820, 835-36 (Pa. Super. 2016) (citation omitted); *see also Commonwealth v. Snyder*, 289 A.3d 1121, 1127 (Pa. Super. 2023) (stating sentencing guidelines are "purely advisory in nature," and a "sentencing court is permitted to deviate from the sentencing guidelines" where it places "on the record its reasons for the deviation." (citations omitted)). When doing so,

> a trial judge … [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact

on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted).

This Court has explained the sentencing guidelines

have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors – they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

*Commonwealth v. Holiday*, 954 A.2d 6, 13 (Pa. Super. 2008) (citation omitted). *But see also Commonwealth v. Rodda*, 723 A.2d 212, 216 (Pa. Super. 1999) (*en banc*) (holding the record must demonstrate "with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.").

The Sentencing Code directs a trial court to follow the general principle that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); *see also Coulverson*, 34 A.3d at 145 (observing a sentencing court "is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due

consideration by the court of the statutory considerations enunciated in that section." (citations and brackets omitted)).

Further, it "is well settled that 'imposition of consecutive rather than concurrent sentences rests within the trial court's discretion.'" *Commonwealth v. Foust*, 180 A.3d 416, 434 (Pa. Super. 2018) (quoting *Commonwealth v. Harvard*, 64 A.3d 690, 703 (Pa. Super. 2013)); *see also Hill*, 66 A.3d at 370.

> Although Pennsylvania's system stands for individualized sentencing, **the court is not required to impose the "minimum possible" confinement**. Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.

*Commonwealth v. Brown*, 249 A.3d 1206, 1216 (Pa. Super. 2021) (citation omitted; emphasis added). "An appellant is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." *Lawrence*, 313 A.3d at 286 (emphasis added; citation and brackets omitted); *see also Foust*, 180 A.3d at 434-35 (collecting cases and stating, "extensive case law in this jurisdiction holds that defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence.").

Here, Appellant claims the trial court abused its discretion in imposing unreasonable, consecutive sentences on the remaining convictions, which were above the sentencing guidelines, "without adequate justification." Appellant's Brief at 31. According to Appellant, "[t]here is a singular and excessive focus on retribution." *Id.*

The Commonwealth counters the trial court did not abuse its discretion in imposing consecutive, statutory maximum sentences under the circumstances. *See* Commonwealth's Brief at 34-37. According to the Commonwealth, the trial court "thoroughly explained its rational[e] for imposing consecutive maximum sentences for the remaining" convictions. *Id.* at 34. The Commonwealth contends the court appropriately "considered the totality of the circumstances surrounding [Appellant's] convictions, including his repeated threatening and disruptive behavior at trial." *Id.* at 37.

The trial court opined it properly exercised its discretion in imposing a reasonable aggregate sentence under the circumstances:

> Here, the court was required to impose the mandatory term of life in prison without the possibility of parole for [Appellant's] first[-]degree murder conviction. [Appellant's] sentences of 3½ to 7 years['] incarceration for carrying a firearm without a license, 2½ to 5 years['] incarceration for carrying a firearm in public or on the public streets of Philadelphia, 2½ to 5 years['] incarceration for PIC, and 10 to 20 years['] incarceration for possession of firearm by a prohibited person were all departures above the guidelines. In fashioning these sentences, **the court explicitly considered everything presented during the history of the case.** N.T.[,] 11/16/23[,] at 138. This included all the evidence presented at trial, the information presented in both counseled and *pro se* pretrial pleadings, and everything presented at sentencing[,] including the statements [Appellant] made before and during the hearing. *Id.* The court also took into account the required statutory factors. *Id.* at 138-39[; *see also* 42 Pa.C.S.A. § 9721(b), *supra*.] **In considering the need for the protection of the public, the court noted that** [**Appellant**] **was a grave threat to the public given his history of misbehavior**. *Id.* at 138. In considering the gravity of the offense in relation to its impact on the victim and the community, the court noted the loss of Johnson's life at a young age and the profound impact the homicide had on Johnson's family. *Id.* at 138-39. The court also considered [Appellant's] rehabilitative needs. *Id.* at 139.

Additionally, **the court noted on the record its rationale for departing above the guidelines** and imposing consecutive sentences, both of which were eminently reasonable given [Appellant's] history of misbehavior. **The court noted that [Appellant's] contempt for the rule of law and judicial process was "unprecedented"** and that the court had never seen anyone act with such disdain for the rule of law. *Id.* at 139-43. [Appellant] **threatened five out of the six lawyers who represented him over the course of the case.** *Id.* at 139-40. He punched his lawyer in the face during his prior trial. *Id.* at 140. At that same trial, he threatened jurors from the adjacency lockup[,] causing jurors to be so upset and feel so threatened that they were unable to continue, which resulted in a mistrial. *Id.* [Appellant] **then threatened to kill the Honorable Barbara McDermott**, which caused Judge McDermott to recuse herself from the case. *Id.* Finally, the court noted that, given [Appellant's] history, it fashioned accommodations so that [Appellant] could still participate in trial and [Appellant] immediately, within three minutes of the court's opening remarks, began yelling and had to be removed from the adjacency lockup in order to prevent another mistrial. *Id.* at 140-41. Accordingly, consecutive sentences departing above the guidelines were reasonable.

Trial Court Opinion, 4/15/24, at 22-23 (emphasis added; footnote omitted; some capitalization modified).

Our review discloses the trial court's reasoning is supported by the record, and we agree with its conclusion. *See id.* The court clearly did not abuse its ample discretion in imposing reasonable sentences on the remaining convictions under the circumstances. The record belies Appellant's claim the court imposed sentence based solely on retribution. Accordingly, Appellant's discretionary sentencing claim lacks merit.

Based on the foregoing, as we discern no error of law or abuse of discretion by the trial court, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024